WOODCOCK *v.* FIRST NATIONAL BANK OF NILES.

1. APPEAL—FRAUD.

Upon a consideration of the testimony, *held,* that complainant had failed to establish his claim that certain stock, pledged as collateral to a note and mortgage, was fraudulently withheld from him upon the occasion of his taking an assignment of the mortgage.

2. ASSIGNMENT OF MORTGAGE—RESCISSION—ESTOPPEL.

An assignee of a mortgage given by a corporation cannot rescind the assignment upon the ground that the mortgage was the outgrowth of an *ultra vires* transaction, where he was aware of the facts upon which such contention is based before he accepted the assignment.

3. CORPORATIONS—ULTRA VIRES—NEGOTIABLE PAPER.

A note and mortgage given by a corporation cannot be defeated in the hands of a good-faith purchaser before dishonor who took the same as the result of negotiations with the officers of the corporation, on the ground that the transaction out of which the securities grew was *ultra vires.*

Appeal from Berrien; Buck, J., presiding. Submitted November 11, 1896. Decided May 28, 1897.

Bill by Edward F. Woodcock against the First National Bank of Niles, impleaded with Charles A. Johnson and others, to rescind the assignment of a mortgage. From a decree for complainant, defendant appeals. Reversed.

*E. L. Hamilton,* and *Edward Bacon,* for complainant.

*M. L. Howell,* for defendant.

MONTGOMERY, J. In 1891 the Niles Gaslight Company was engaged, and had for some time been engaged, in furnishing light to the citizens of Niles. In April of that year the Niles Electric Company was organized. On the 12th of May the Niles Gaslight Company borrowed of the

First National Bank $10,000, which it used in purchasing a controlling interest in the stock of the electric company. The money was not paid to the company, but the credit was transferred from the gaslight company to the electric company on the books of the bank. The loan was secured by a real-estate mortgage, covering the plant of the Niles Gaslight Company, and also by a pledge of the shares of stock in the electric company acquired by the gaslight company. The loan was also evidenced by a promissory note, signed by the secretary and president of the gaslight company. This note was payable in one year from date. In May, 1892, the bank, by its cashier, extended the time of payment for one year.

Charles A. Johnson was cashier of the First National Bank during this time, and was also a stockholder and an officer in the gaslight company. On the 16th of May, 1892, he sold his stock in the gaslight company, and ceased to be an officer. Complainant was cashier of the Citizens' National Bank, a rival institution. By the records of that bank, it appears that on the 23d of May, 1892, an application was made by the gaslight company for a loan, and the following resolution was adopted: "On motion of Mr. Dean, supported by Mr. Gage, a loan of $10,000, for four months, was agreed upon to the Niles Gaslight Company, upon a mortgage upon their plant." On the 27th of May, in place of making a new mortgage, an assignment in blank was made by the First National Bank, it not being known to the officers of the bank to whom the mortgage was to be assigned; and this, together with the note and pledge of stock, was delivered to Bascom Parker, president of the gaslight company, and Worth Landon, an attorney who had drawn the assignment, upon payment to the bank of the $10,000 secured by the mortgage. It appears that, at the time this transfer was made, two separate notes, each in the sum of $10,000, were delivered by the cashier to Parker. The reason for the existence of these two notes is a matter of dispute between the parties, and will be referred to here-

after.   One of these notes was signed by the secretary of the company only, while the other note was signed by both secretary and president of the gaslight company, and this was the note described in the mortgage.   Parker did not deliver to complainant either the pledged stock or the note signed by both president and secretary, but delivered with the assignment the mortgage, and the note signed by the secretary.

The mortgage and note were not paid, and on the 22d of December, 1893, the complainant filed the bill of complaint in the present case, seeking to rescind the transaction by which he became the purchaser of this mortgage, having, on November 29, 1893, tendered a reassignment of the mortgage to the bank, together with the amount of interest which had been collected by him upon the same. The grounds upon which rescission was sought were two : That a fraud was committed in putting off upon him the mortgage accompanied by the note signed by the secretary alone, and not accompanied by the stock which was collateral to it, his claim being that his agreement with the gas company was that he (complainant) was to receive the same securities which the First National Bank had, and, in effect, that Johnson, cashier of the defendant bank, and Parker, conspired to deceive him, and put off upon him securities which were other and different than those which the bank held; and, *second*, that the purchase by the gas company of the electric light stock was unlawful, and that there was no consideration for this note, and that the gas company, or any member of the company, might avail themselves of that defense, and that a bill had been filed, apparently conceded, however, to be defective, by one of the stockholders in the gas company, for the purpose of annulling this transaction.

The circuit judge, before whom the case was tried, found with the complainant upon the question of fact, and determined that the charge of fraud had been sustained.   We are not able to affirm this determination. The conclusion is based very largely upon the testimony

of Bascom Parker, who, by his own showing, is not a very reliable witness. It is apparent, both by the testimony of Woodcock and Parker, that the negotiations between the gas company and complainant did not, in the first instance, include or relate to the pledged stock of the electric light company at all, and the resolution of the bank, above referred to, shows that the security offered, and which the bank was ready to accept, was to consist of a mortgage upon the plant of the gaslight company. Parker's version of the transaction is that, after an abstract had been secured and shown to the complainant, he was then told for the first time by complainant that he desired an assignment of the securities or mortgage held by the First National Bank, saying that what was good enough security for the First National Bank would be good enough for complainant or his bank. It is an important fact that not until after these negotiations had been entered upon, according to the theory of complainant, was Parker himself aware, as his testimony would show, that the electric light stock held by the gas company was pledged to the First National Bank. His claim is that he informed Johnson of the fact that the parties of whom he was to obtain the money wanted an assignment, which meant that that did not release the stock, and that Johnson thereupon took a blank note, filled it out, and had it executed by the secretary of the gaslight company, Mr. Landon, to be substituted in place of the note secured by the mortgage. He also testified that at this time he informed Johnson that the Citizens' Bank did not desire a new mortgage; that they wanted the one which he had assigned over to them, and in that event the stock would still be tied up, and Mr. Bacon and himself (Parker) would be unable to raise the money to pay to Johnson and the First National Bank the money that Parker personally owed them. The theory of defendant, on the other hand, as supported by the testimony of Johnson and of Landon, is that the note signed by the secretary was carried in the bank so that the bank ex-

aminer would not be aware of the fact that the bank was carrying paper secured by real-estate mortgage. Both deny *in toto* the charge of conspiracy, and we think the version of defendant is established by the great weight of the testimony. Parker's own testimony, if believed, would implicate Johnson in a conspiracy, not only to deceive the complainant, but to wink at the embezzlement of the funds of the gaslight company by Parker, for the purpose of appropriating the money to the payment of his own debts, and this notwithstanding the fact that the company was still indebted to Johnson and to his bank. We choose not to credit the testimony of such a witness when opposed by that of reputable witnesses, and particularly in view of the fact that, when this loan was originally agreed upon, no security other than the mortgage on the plant was contemplated by either party to the transaction.

As to the contention that the mortgage was void because it was the outgrowth of an *ultra vires* transaction, it appears that complainant, at the time he took the assignment of this mortgage, was aware that the same was given to secure a loan that was made for the purchase of this electric light stock. It further appears that by no effective proceedings has the gaslight company ever repudiated this contract; and it may be added that if the complainant was not aware of an infirmity in these securities in the hands of the First National Bank, as the paper was not dishonored when received by complainant, and was negotiated by the officers of the gaslight company, the security could not be defeated in complainant's hands. *Wright* v. *Pipe Line Co.*, 101 Pa. St. 204 (47 Am. Rep. 701).

The decree of the court below, rescinding this transaction, will be reversed, with costs of both courts to the defendant.

The other Justices concurred.