R. VANDER PLOEG, Appellant, v. ALBERTUS VAN ZUUK and B. VAN ZUUK.

Bills and notes: HOLDER IN DUE COURSE: STATUTORY PROVISIONS.
1 Under the Negotiable Instruments Act the payee in a note, which was executed in blank and delivered to a third party who filled it out payable to the payee and delivered it to him, is not a holder in due course, and takes the instrument subject

to a defense by the maker that it was not completed in accordance with the understanding of the maker and such third party.

*Appeal from Mahaska District Court.*— HON. BYRON W. PRESTON, Judge.

WEDNESDAY, JULY 3, 1907.

ACTION on a promissory note.  Plaintiff appeals from judgment on a directed verdict in favor of the defendants.— *Affirmed.*

*H. H. Sheriff* and *William G. Vander Ploeg,* for appellant.

*C. Ver Ploeg,* for appellee B. Van Zuuk.  *P. H. Bousquet,* for appellee Albertus Van Zuuk.

McCLAIN, J.— The facts, established practically without dispute, are that the note for $2,000, naming the plaintiff as payee, and the two defendants as joint makers with one Pothoven, on which this action is brought, was signed by these two defendants before it was fully completed, being at the time their signatures were affixed thereto a mere blank printed form; that these defendants so signed their names at the request of Pothoven, who was a partner of one of them in a mercantile business, on the representation that he might within a short time find it necessary to raise $150 or $200 for temporary use in the business; that Pothoven, being indebted on his individual account to plaintiff on a note for about $2,000, inserted plaintiff's name as payee, $2,000 as the amount to be paid, and the rate of interest, and delivered the instrument, filled out by him without authority, to the plaintiff, who thereupon surrendered to him the past-due obligation.  It appears in the evidence that the date was filled in by one W. G. Vander Ploeg, who frequently transacted business for the plaintiff, his father, and who knew of

the filling of the name of the payee and the amount by Potho-ven before the note was delivered to plaintiff; but the final delivery was made directly by Pothoven to plaintiff, and there is a conflict in the evidence as to whether the son had any authority to act for the plaintiff in this particular trans-action, or whether plaintiff had any knowledge that his son had so acted for him. If it were material to charge the plaintiff with the knowledge which his son had as to the act of Pothoven in filling out the note, the question should have been submitted to the jury, and we shall therefore dispose of the case without taking into account any knowledge of or participation in the act of Pothoven in filling out the note, on the part of W. G. Vander Ploeg.

We have, then, the simple case of a note wrongfully filled out and delivered by one of the makers to the payee, without notice to the payee that the instrument as delivered is not filled out in accordance with the authority given by the other makers to the one who thus fills it out and delivers it. With reference to the filling of blanks in an instrument after the affixing of his signature by the maker sought to be charged, the Negotiable Instruments Acts (Acts 29th General Assembly, chapter 130; Code Supp. 1902, section 3060a) contains the following section:

Section 14, Blanks — when may be filled. Where the in-strument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such in-strument, after completion, is negotiated to a holder in due course it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in

accordance with the authority given and within a reasonable time.

It is apparent from the last sentence of this section that, if plaintiff is to be regarded as " a holder in due course," then the instrument is effectual in his hands for all purposes as though it had been filled up strictly in accordance with the authority given by defendants to Pothoven; i. e., defendants would not be allowed to contend as against a holder in due course that Pothoven did not have authority to fill the instrument out for $2,000; but, under the sentence immediately preceding the last, if plaintiff is not to be treated as a holder in due course, then, as defendants became parties thereto prior to its completion, they are not liable to plaintiff, because it was not filled up in accordance with the authority given.   By section 191, the term " holder " is defined as meaning " the payee or indorsee of a bill or note who is in possession of it, or the bearer thereof," and by section 52 a " holder in due course " is defined as one who has taken the instrument complete and regular upon its face, before maturity, without notice of previous dishonor, in good faith and for value, and without notice that at the time it was negotiated to him there was any infirmity or defect in the title of the person negotiating it.   By section 59, " every holder is deemed *prima facie* to be a holder in due course," and by section 57 " a holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

It seems to us under these definitions and the applications thereof that the plaintiff was a holder of the note, but not a holder in due course.   The latter term seems unquestionably to be used to indicate a person to whom after completion and delivery the instrument has been negotiated.   In the ordinary case the payee of the instrument is the person with whom the contract is made, and his rights are not in

general dependent on any peculiarities in the law of negotiable instruments. The peculiarities of that law distinguishing negotiable instruments from other contracts relate to a holder who has taken by negotiation, and not as an original party. This is the construction put on the same phrase used in the English Negotiable Instruments Act by Lord Russell, C. J., in *Lewis v. Clay,* 67 L. J. Q. B., 224, in which he says:

"A holder in due course is a person to whom after its completion by and as between the immediate parties the bill or note has been negotiated. In the present case, the plaintiff is named as payee, on the face of the promissory notes, and therefore is one of the immediate parties. The promissory notes held and sued on [by the person named as payee therein] have in fact never been negotiated within the meaning of the act." In *Herdman v. Wheeler,* 1 K. B. (1902) 361, this language of Lord Russell is said to be dictum, and it evidently is so, for in the further course of the opinion he points out that, without regard to the definition of that term which he gives, the result would be the same. But the court, in *Herdman v. Wheeler,* holds that the delivery of a note by one to whom it has been intrusted by the maker for the purpose of delivery after the filling in of the name of the payee, which has been left blank at the time of the affixing of the maker's signature, does not constitute a negotiation, and it seems to us clear that if there is in such case not a negotiation then the payee whose name is thus filled in cannot be a holder in due course. In other words, we think that "holder in due course" should be construed as applicable only to one who takes the instrument by negotiation from another who is a holder. Certainly, in the case before us, Pothoven was not a holder of a promissory note, for as the instrument was delivered to him it was not a note at all, but only a blank form of a note with the makers' name affixed. In *Guerrant v. Guerrant,* 7 Va. Law Reg. 639, a case at *nisi prius,* it is held that the holder filling a blank left in the

instrument at the time of delivery acts at his peril as to the authority given by the maker signing the instrument with the name of the payee left blank, and putting it in the hands of another for final delivery, and says that, while this interpretation of the Negotiable Instruments Act involves a change in the law as recognized in that State before the act was passed, such interpretation is required by the language of the act itself.    In *Boston Steel & Iron Co. v. Steuer,* 183 Mass. 140 (66 N. E. 646, 97 Am. St. Rep. 426), a case decided under the Negotiable Instruments Act as adopted in that State, it is held that one who signs a check, leaving the name of the payee blank, and instructs another to fill in the proper amount necessary to satisfy the debt of such signer to the payee named, is not bound by the check in the hands of such payee, if it is used by the person thus intrusted with it for the payment of his own debt to the creditor; the amount of such debt being correctly filled in by the creditor. In that case, the person to whom the check was intrusted exceeded his authority in using it for the payment of his own debt, instead of the debt of the signer of the check, and in this respect we think the case is analogous to the one before us.    There is language in the opinion with reference to another check which was fully completed as to name of payee and amount, but was also used by the person to whom it was intrusted in violation of his authority in the payment of his own debt, which is not in harmony with our conclusion that the payee to whom the instrument is first delivered cannot be a holder in due course; but in this respect we are not inclined to follow the Massachusetts case.

We do not mean to say that in no case can the person named as payee in a negotiable instrument be the holder thereof " in due course."    If A., purchasing a draft to be transmitted to B., in payment of A.'s debt to B., causes the draft to be drawn payable to B., no doubt A. is the holder of such draft, and B. taking it for value becomes a holder in due course.    This was true before the passage of the Ne-

gotiable Instruments Act. *Armstrong v. American Exchange Nat. Bank,* 133 U. S. 433 (10 Sup. Ct. 450, 33 L. Ed. 747); *Watson v. Russell,* 3 B. & S. 34, affirmed in 5 B. & S. 968. There is no reason to think the situation of the parties to such a transaction is different under the act. No doubt the payee named in a promissory note might under similar circumstances be a holder in due course. This is the theory on which the court in *Boston Steel & Iron Co. v. Steuer, supra,* holds the payee named in the first of the checks considered in that case to be a holder in due course; but we are unable to understand how the rule is applicable under the facts of the case, for the check was not delivered by the drawer as a valid and complete instrument to the person intrusted with it, but it was given into his hands only for delivery to the payee in extinguishment of the drawer's debt to the payee. Until thus delivered to the payee, it had no validity for any purpose. Before such delivery, the person intrusted with it was not a holder. After such delivery, the payee was a holder, but not, as we think, a holder in due course.

The conclusion which we reach is perhaps different from what it would have been had the Negotiable Instruments Acts not been passed. It has been regarded as well-settled law that one who intrusts an incomplete instrument to another to be completed by him and delivered is bound to any one who relies in good faith on the genuineness of such instrument, although the person intrusted with completing and delivering the instrument has exceeded his authority; and this rule has been held applicable in favor of the payee as well as the transferee of such an instrument. *Chariton Plow Co. v. Davidson,* 16 Neb. 374 (20 N. W. 256); *Androscoggin Bank v. Kimball,* 10 Cush. 373; *Johnson Harvester Co. v. McLean,* 57 Wis. 258 (15 N. W. 177, 46 Am. Rep. 39); *Fullerton v. Sturges,* 4 Ohio St. 530; *Diercks v. Roberts,* 13 S. C. 338; *Frank v. Lilienfeld,* 33 Grat. (Va.) 377; *Davis v. Lee,* 26 Miss. 505 (59 Am. Dec.

267) ; *Russell v. Langstaffe,* 2 Doug. (K. B.) 514; 1 Daniel, Negotiable Inst. (5th Ed.), sections 142–147, 769–769a; 1 Randolph, Commercial Paper (2d Ed.), section 181; 2 Randolph, Commercial Paper (2d Ed.), section 986; 3 Randolph, Commercial Paper (2d Ed.), section 1875; Norton, Bills & Notes (2d Ed.) 181; Clark & Skyles, Agency, section 60. Indeed, it seems to have been thought immaterial whether or not the person to whom the instrument is made payable and delivered had knowledge that it had been filled out so as to make it an effectual instrument, by one to whom it was intrusted by a maker who had signed it to be filled out and delivered, for it is said that the holder is entitled to assume that the person in whose hands it was placed for final execution had authority to do what he did do in making it an effectual instrument, and is not charged with knowledge of any limitations upon such authority. *Johnson v. Blasdale,* 1 Smedes & M. (Miss.) 17 (40 Am. Dec. 85) ; *Joseph v. First National Bank,* 17 Kan. 256; *Huntington v. Branch Bank,* 3 Ala. 186; 1 Daniel, Negotiable Inst. (5th Ed.), section 843; Mechem, Agency, section 394. This principle is illustrated by the rule, well settled in this State and elsewhere, that a surety who signs an instrument and intrusts it to the principal maker for delivery is bound, although the principal delivers it in violation of conditions or instructions imposed by the surety on the principal which were not known to the payee. *Sawyers v. Campbell,* 107 Iowa, 397; *Micklewait v. Noel,* 69 Iowa, 344; *Davis Sewing Machine Co. v. Buckles,* 89 Ill. 237; *Smith v. Moberly,* 49 Ky. 266 (52 Am. Dec. 543) ; *Ward v. Hackett,* 30 Minn. 150 (14 N. W. 578, 44 Am. Rep. 187) ; *Craig v. Hobbs,* 44 Ind. 363; Brandt, Suretyship (3d Ed.), section 457.

But we must take the Negotiable Instruments Act as it is written, and, while the general purpose was to preserve the existing law so far as it was uniform, yet in many respects in which there was a conflict or doubt under the au-

thorities the language of the statute lays down rules which are not to be ignored simply because in some respects a change in the law is effected. With reference to the language which we have been considering in this very case, taken substantially from section 20 of the English Bills of Exchange Act, the court says, in *Herdman v. Wheeler, supra:*

We have been very reluctant to come to the conclusion that the judgment in favor of the defendant in this case was right, because it appears dangerous even to cast any doubt upon a payee's right to recover when he has taken a bill or note complete and regular on the face of it, honestly and for value; but, after carefully considering the matter, we have come to the conclusion that we should be unfairly straining the words if we did not hold that 'negotiated,' in the proviso at the end of the twentieth section, meant transferred by one holder to another. It is to be observed that the Bills of Exchange Act, in section 2 [section 191 of our act] defines 'issue' as meaning 'the first delivery of a bill or note, complete in form, to a person who takes it as holder. . . .' There is therefore a technical word defined and used in the act to mean that which [the person intrusted with the completion and delivery of the instrument] did here, and the appropriate words to have used in the proviso to section 20, if it had been intended to include this case, would have been, 'if such instrument after completion is issued or negotiated to a holder in due course.' Those are not the words, and, although we think that the present case might possibly have been decided in the plaintiff's favor before the Bills of Exchange Act was passed, we think that we cannot consistently with the meaning of 'issue' and 'negotiate' in the act hold that the present case is covered by the words used in the proviso. That being so, it falls within the first part of the second subsection of section 20 [i. e., the sentence of our section preceding the last]; and, as the authority of the defendant was not strictly followed, he is not liable.

We see no escape from the conclusion that, under the statute, plaintiff, being not a holder in due course, but the person to whom the note was made payable, and to whom its delivery as an effective instrument was first made, took it

subject to the defense that Pothoven had no authority to fill in $2,000 as the amount of the note and deliver it to plaintiff.

The judgment of the trial court is therefore *affirmed*.