Spear, J.
Whether or not the answer avers a defense to the cause of action set up in the petition is the question here. The theory of the defendants’ pleading is that Rockfield and Snyder, by writing their names across the back of the note, became indorsers in the' commercial sense, and therefore entitled to notice of demand at maturity of the maker and of non-payment, and, failing that, no liability attached. The theory of the petition is that these defendants, having signed the note before delivery, must be held to have signed with the purpose of giving it credit and of aiding negotiability, and therefore stand as makers, and although their names appear on the back of the instrument, and they are in law sureties, yet they are not indorsers in the commercial sense and therefore not entitled to notice of demand and non-payment. This view is the one adopted by the trial court which incorporated in the judgment entry a finding that the defendants are indebted as joint and several makers of the note, and this is the view taken of the question by the circuit court in affirming the judgment of the common pleas. Which is the correct view is the question we have. And here it is proper to express our obligation to the learned counsel whose ample and luminous briefs have greatly *323 aided in our examination and disposition of the case.
That the conclusion adopted by the lower courts is in accord with the law as held in this state from early times, and with all decisions of this court thus far made, is conceded. The latest deliverance on the subject is the case of Ewan v. The BrooksWaterfield, Co., 55 Ohio St., 596, opinion by Williams, C. J. It is there held that where the name of a third party, a stranger to the note, appears in blank upon the back of the note at the time it takes effect, his undertaking rests upon the consideration which supports the note, and the presumption is that he intended to be liable as a surety, and he will be held accordingly unless it is shown that there was a different agreement between the parties. This conclusion is reached after a careful and somewhat extended review of authorities, many of them decisions of this court, and is supported by strong and convincing argument. While a contrary doctrine, holding such party to be an indorser in the commercial sense, had been held in a number of states, notably Alabama, California, Connecticut, Indiana, Mississippi, New York, Oregon, Pennsylvania and Wisconsin, the Ohio rule, as above indicated, had been the settled common law rule of the states of Arkansas, Colorado, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, North Carolina, Rhode Island, South Carolina, Texas, Utah and Vermont.
The statute referred to is the act of April 17, 1902, known as the Negotiable Instruments act (95 O. L., 162), carried into the Revised Statutes as. *324 sections 3171 to 3178»' inclusive, the particular sections relied upon being 3171, 3173A, 3173^ 3l73k> 3I73(1> 3l74g and 3178a. By the provisions of these sections a negotiable instrument must be in writing and signed by the maker or drawer. The person primarily liable is the person who by the terms of the instrument is absolutely required to pay the same, all others being secondarily liable. A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor,” is deemed to be an indorser unless he clearly indicates, by appropriate words, his intention to be bound in some other capacity. Then follows, as to liability, this: Where a person not-otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser: 1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. 2. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer. 3. If he signs for the accommodation of the payee he is liable to all parties subsequent to the payee. Every indorser who indorses without qualification, guarantees to all subsequent holders the genuineness of the instrument, the title, the capacity of previous parties to contract, etc., and engages that on due presentment, the instrument shall be accepted or paid or both, as the case may be, and that, if it be dishonored and the necessary proceedings' on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it. Pre *325 sentment for payment must be made at a reasonable hour on a business day at a proper place, to the person primarily liable on the instrument, or if he is absent or inaccessible, to any person found at the place where the presentment is made. When such instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged.
The question at issue very largely turns upon what is meant by the terms of section 3173b the substance of which we here repeat: “Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser,” etc. It seems to have been the view of the learned circuit court (see opinion by Dustin, J., 8 O. C. C., N. S., 290), that inasmuch as the liability defined by the rules following the above quoted portion of section 3173b does not differ essentially from the liability attaching to such party under the decisions of this court, that no change in the law can be presumed to have been intended by the general assembly in the enactment of the statute. Also that the subsequent provisions of the sections relating to indorsers and providing what shall be done to fix liability, etc., are not inconsistent with this conclusion because the later sections apply only to general indorsers, and in those sections every indorser is described as such, is called an indorser, while in the earlier section the party described is only to be deemed an indorser, and has the liability of an indorser only to a limited extent. The contention *326 further is that the terms of section 3173/1 forbid the conclusion that such party is to be deemed an indorser in the commercial sense because he must, in order to have that effect, place his name on the back otherwise than as maker, and the rule is and was, that the person so placing his name is a maker unless he shows a different agreement between, the parties.
There is much plausibility in these contentions, and they would seem to be sound were it not for the incorporation of the words “as indorser” in section 31732. Had these words been left out of the section the construction claimed would not seem an unnatural one. But we are required, by the inexorable rule of construction, to give to them some signification, some meaning consistent with a rational purpose in placing them in the statute. The law makers were making law. They cannot be presumed to have been simply dealing with legal terms in a loose, popular sense. The word “indorser” has a distinct, clearly defined legal meaning. An indorser is one who undertakes to be responsible to the holder of the paper for the amount thereof, if the latter shall, at maturity, make legal demand of the payer, and in default of payment, give proper notice thereof to the indorser. The language of the section is plain and free from ambiguity. The words express a clear meaning. The party has placed his name upon the instrument where general indorsers sign. He is not a party to the note, but is a stranger. Section 3173k says he shall be deemed to be an indorser unless he clearly indicates by appropriate words his intention to be bound in some other *327 capacity. He has not so indicated. He has used no words appropriate or otherwise. His status on the paper is, therefore, fixed by the emphatic words of the statute. Then follows the fixing of liability. He is liable “as indorser.” And how is that? Why, he must pay when, and only when, proper demand has been made of the maker at maturity and legal notice given him. This is clearly shown by what follows. Every indorser who indorses without qualification engages that on due presentment and dishonor, and due notice to him, he will pay. This expresses the extent of his liability; without these requisites being complied with he is discharged. And, then, as though to cover a doubtful situation, the provision is (section 3171/») that where the language of an instrument is ambiguous because of the signature being so placed that it is not clear in what capacity the person intended to sign, he is deemed to be an indorser. Of the rules prescribed by section 3-173?, it is enough to say that they are not inconsistent with the obligation of the general indorser. He, too, is liable to those who come after him as indorsers or holder. The important question is not to whom is such party liable but in what capacity, in what relation, is he liable?
The contention that the provision (section 3173&) to the effect that every indorser undertakes to pay if the instrument is dishonored and he has due notice applies only to general indorsers, we think untenable. The language forbids it. It is: “Every indorser who indorses without qualification,” etc. The word “every” is a term of inclusion. It embraces every party who, by previous *328 provisions, is classed as an indorser unless his indorsement . has been qualified by appropriate words. Nor is the obligation as indorser imposed on the stranger an unreasonable one, for, if not content to assume the position of indorser, the opportunity to indicate upon the paper his intention to be bound in some other capacity is given him.
The contention that these later provisions relate only to general indorsers rests wholly on the assumption that in placing his name on the back in blank the stranger himself fixes his own position and that he has conclusively declared himself a maker; that is, thát he has placed his name as maker. But it seems a sufficient answer to this to say that he has not and could not, by a mere blank indorsement, so place himself, because the statute fixes his position. That position is important only as it relates to his liability, and the statute has said that that liability is “as indorser.” An indorser is not a maker or a drawer; not ope primarily liable. This conclusion ignores neither the words: “A person placing his name upon an instrument otherwise than as maker,” etc., nor the words: “Where a person not otherwise a party to an instrument places,” etc. Both sections must be construed together. Thus construed .they .simply describe a person who is not a party by the terms of the instrument. And he is not, in fact, such party in any possible sense at the time he places his signature. He remains a total stranger until he has placed his name on the back- and then the statute says he is an indorser.
But other considerations enter into the question. *329 It is so much a matter of common knowledge as to make it proper to take judicial notice of the fact, that the act herein considered was enacted because of an effort on the part of the bar of many, if not all of the states of the Union,- to bring about a uniform system of law respecting negotiable instruments. In a substantial measure the effort has been successful. Of the states which had, by judicial decision, adopted the rule prevailing in this state, the legislatures of the following have enacted a Negotiable Instruments act substantially like that of Ohio, viz.: Colorado, Maryland, Massachusetts, North Carolina, Rhode Island and Utah. And it has been enacted also in the states of Connecticut, Florida, Iowa, New Jersey, New York, North Dakota, Oregon, Pennsylvania, Tennessee, Virginia, Washington and Wisconsin. Joyce on Defenses to Commercial Paper, at page 859, gives a list of thirty-two states and territories which have passed the act, including, in addition to the foregoing, the following: , Idaho, Kansas, Kentucky, Louisiana, Michigan, Missouri, Montana, Nebraska, West Virginia, Wyoming. Also Arizona, New Mexico, and the District of Columbia. To these may be added the states of Alabama and Illinois, and the territory of Hawaii. All of these several statutes are not framed, in the particular here under investigation, in the exact language of the Ohio act, but it. is believed that they all embody the same principle, and it is manifest that one prominent motive leading to their enactment was the desire to establish a uniform law on the subject of negotiable instruments. And wherever these acts have received *330 judicial interpretation in the several states this purpose has been recognized. See Fessenden v. Summers, 62 Cal., 484; Fisk v. Miller, 63 Cal., 367; Downey v. O’Keefe, 26 R. I., 571; Thorpe v. White, 188 Mass., 333; 7 Cyc., 673; Bank v. Law, 127 Mass., 72; Toole v. Crafts, 193 Mass., 110; Gibbs v. Guaraglia, 67 Atl., 81; Baumeister v. Kuntz, 42 So., 886; Farquhar Co. v. Higham, 112 N. W., 557; Vander Ploeg v. Van Fuuk, 112 N. W., 807.
That this purpose was prominent in the minds of the members of our general assembly in the enactment of the Ohio act is shown by the title of the act itself, which is: “An act to establish a law uniform with the laws of other states on negotiable instruments.” The desirability of such legislation had been long felt by commercial people of our state as well as by the judiciary and the bar at large. Indeed the learned jurist who reported the case of Ewan v. Brooks-Waterfield Co., supra, gives expression to that sentiment in his opinion. True, it is as suggested by the circuit court, that the act covers many phases of the subject and that the title does not apply especially to the subject of indorsement, but inasmuch as this very subject had been the source of irreconcilable conflict between judicial utterances in so many states, and that such differences of judicial interpretation of the common law had been so marked and these differences so recently emphasized by this court, and the importance of uniformity in the law on this particular phase of the general subjects had been so recently pointed out, it is inconceivable, it seems to us, that the general *331 assembly, while treating the subject at large, should have failed to endeavor to establish uniformity respecting the position of indorsers and their liability to others connected with the paper. These considerations, if they stood alone, and if the language of the act were less plain than it is, would impose a duty upon this court to look for ground in the statute warranting the conclusion that the purpose of the act is to bring Ohio into harmony with the other states of the Union on so important a branch of the law as the relation of parties to commercial paper, but we are not compelled to resort to such an effort, for the plain, natural meaning of the language of the sections cited, as we think, fully warrants, if indeed it does not compel, the conclusion hereinbefore indicated, which conclusion is .also supported by a number of the cases hereinbefore cited. See Fessenden v. Summers; Fisk v. Miller; Downey v. O’Keefe; Thorpe v. White; 7 Cyc.; Bank v. Law; Toole v. Crafts; Gibbs v. Guaraglia; Baumeister v. Kuntz; Farquhar Co. v. Higham; Vander Ploeg v. Van Fuuk.
But another purpose seems to us to be indicated by this legislation. Not only were the courts of the country in conflict respecting the attitude and liability of a third party, a stranger, who placed his name in blank on the back of commercial paper, but the situation was in itself an anomalous one, calculated to lead, as it often did lead, to confusion respecting the duty of the holder of such paper with regard to demand and notice. Mistakes in this respect were easy and were frequently made, often resulting in litigation, and, *332 not infrequently, loss. To clear this situation up, and to establish a plain, easily understood rule, and one of universal application, was surely a result of high importance to all who deal in commercial paper; and it seems to us that the desire to accomplish this purpose had much to do with inducing the enactment of the Negotiable Instruments act by our general assembly.
It follows from these conclusions that by force of' sections 3171, 3173/1, 3173Í WM* 3174g and 3178a; of the Revised Statutes, a person who, being a stranger to a promissory note, places his name on the back by blank indorsement, is an indorser of the paper and can not be held in any other capacity. As such he is entitled, in order to render him liable, to notice of demand upon those who are primarily liable, and failing such demand and due notice to him, he is discharged. The answer, therefore, stated a defense, and the sustaining of the demurrer and rendering judgment for the Bank upon the note was- error. Judgment reversed and cause remanded.

Reversed.

Si-iauck, C. J., Price, Crew, Summers and Davis,. JJ., concur.