BRONSON v. STETSON.

1. BILLS AND NOTES—MORTGAGES—NEGOTIABLE INSTRUMENTS.
Note, although secured by mortgage, is negotiable.

2. SAME—BONA FIDE PURCHASER.
*Bona fide* purchaser in due course of negotiable instrument takes mortgage securing it free from all equities and defenses which mortgagor could have set up against mortgagee.

3. SAME—NOTICE OF DEFECT—BONA FIDE PURCHASER.
Payee having knowledge that her name was written in blank note and mortgage by makers' agent is not holder in due course under negotiable instruments law (2 Comp. Laws 1915, § 6055), where agent exceeded his authority in so doing, although payee believed agent was acting within his authority and paid full value.

Appeal from Genesee; Black (Edward D.), J. Submitted April 10, 1930. (Docket No. 71, Calendar No. 34,821.) Decided October 28, 1930.

Bill by Joseph Bronson and another against Ida A. Stetson to set aside a mortgage on land and a note. From decree for defendant, plaintiffs appeal. Reversed.

*Farley & Elliott,* for plaintiffs.

*Cook, Sheppard & Stipes,* for defendant.

CLARK, J. The bill was filed to set aside a mortgage on plaintiffs' land in Flint, which land they had received in exchange for a farm. Mears, plaintiffs' agent, effected the exchange, and in so doing represented to them that there was a mortgage of nearly $800 on the Flint property, which plaintiffs were to assume, and that the man who held it would

On right of innocent payee to recover on a note signed in blank and entrusted to a third person who exceeds his authority in filling up blanks before delivery, see annotation in 13 L. R. A. (N. S.) 490; L. R. A. 1915B, 144.

want to turn it over to Union Trust & Savings Bank and get his money. Mears had plaintiffs make and execute a mortgage covering the Flint property to secure a note also made of even date for $800 payable in three years with interest, on which was stated it was secured by real estate mortgage of same date. As to name of payee and mortgagee the papers were left blank. It was agreed, and Mears was so authorized, that blanks were to be filled in name of Union Trust & Savings Bank. Mears received the papers. He turned them over to the defendant, Mrs. Stetson, whose name, to her knowledge, he wrote into the blanks. She asked him "if he had a right to make out those papers, and he said he had because he was a notary public." Mrs. Stetson paid Mears $800. There had been no such mortgage on the property. Mears procured plaintiffs to make the mortgage and note by fraud. The trial court held:

"There is no question but what the mortgage and note given by plaintiffs was fraudulently obtained by Mears, and that the defendant knew that the name of the mortgagee, also the name on the note, was written in by said Mears at the time she paid him the money for the mortgage.

"Of these two innocent parties, whereby. somebody must lose by the fraud of the said Mears, the court finds that the plaintiff in making the said mortgage made it possible for Mears to dispose of the same, which he did, and obtained from another innocent party the eight hundred dollars which he retained for himself. Of these two innocent parties the court finds that the plaintiff made it possible for the defendant to make this investment, and therefore finds that the mortgage and note in the hands of said defendant was a valid, legal, and existing claim against plaintiff's property."

The decision of the trial court is right if defendant received the papers free from the equities, if she is a *bona fide* holder. *Graham* v. *Sinderman*, 238 Mich. 210 (51 A. L. R. 1225).

The note, although secured by mortgage, was negotiable. *First State Savings Bank* v. *Russell*, 244 Mich. 298; 8 C. J. p. 127.

A *bona fide* purchaser in due course of a negotiable instrument takes the mortgage securing it free from all equities and defenses which the mortgagor could have set up against the mortgagee. 41 C. J. p. 693; *Cox* v. *Cayan*, 117 Mich. 599 (72 Am. St. Rep. 585); *Woodcock* v. *First Nat. Bank of Niles*, 113 Mich. 236.

So the question is, Does the defendant hold the note in due course?

Under the law prior to and apart from the negotiable instruments law, chapter 119, 2 Comp. Laws 1915, the decision of the trial judge might perhaps be sustained. Plaintiffs gave to their agent, Mears, express parol authority to fill in the blank. 1 R. C. L. p. 1008. He exceeded his authority in writing in the name of defendant. He had apparent authority, and defendant was ignorant of the limitation. She did know of the blank in the note, but there is nothing else to challenge her good faith, and she paid full value. The law above mentioned is well stated in *Vander Ploeg* v. *Van Zuuk*, 135 Iowa, 350 (112 N. W. 807, 13 L. R. A. [N. S.] 490, 124 Am. St. Rep. 275):

"It has been regarded as well-settled law that one who intrusts an incomplete instrument to another to be completed by him and delivered is bound to anyone who relies in good faith on the genuineness of such instrument, although the person intrusted with

completing and delivering the instrument has exceeded his authority; and this rule has been held applicable in favor of the payee as well as the transferee of such an instrument. *Chariton Plow Co.* v. *Davidson,* 16 Neb. 374 (20 N. W. 256); *Androscoggin Bank* v. *Kimball,* 10 Cush. (64 Mass.) 373; *Johnston Harvester Co.* v. *McLean,* 57 Wis. 258 (15 N. W. 177, 46 Am. Rep. 39); *Fullerton* v. *Sturges,* 4 Ohio St. 529; *Diercks* v. *Roberts,* 13 S. C. 338; *Frank* v. *Lilienfeld,* 33 Gratt. (74 Va.) 377; *Davis* v. *Lee,* 26 Miss. 505 (59 Am. Dec. 267); *Russel* v. *Langstaffe,* 2 Doug. (K. B.) 514; 1 Daniel, Negotiable Instruments (5th Ed.), §§ 142–147, 769–769a; 1 Randolph, Commercial Paper (2d Ed.), § 181; 2 Randolph, Commercial Paper (2d Ed.), § 986; 3 Randolph, Commercial Paper (2d Ed.), § 1875; Norton, Bills & Notes (2d Ed.), 181; Clark & Skyles Agency, § 60. Indeed, it seems to have been thought immaterial whether or not the person to whom the instrument is made payable and delivered had knowledge that it had been filled out so as to make it an effectual instrument, by one to whom it was intrusted by a maker who had signed it to be filled out and delivered, for it is said that the holder is entitled to assume that the person in whose hands it was placed for final execution had authority to do what he did do in making it an effectual instrument, and is not charged with knowledge of any limitations upon such authority. *Johnson* v. *Blasdale,* 1 Smedes & Marshall's (9 Miss.) 17 (40 Am. Dec. 85); *Joseph* v. *First Natl. Bank,* 17 Kan. 256; *Huntington* v. *Branch Bank,* 3 Ala. 186; 1 Daniel, Negotiable Instruments (5th Ed.), § 843; Mechem, Agency, § 394.''

See *Sweet* v. *Swift,* 65 Mich. 90, instructive, although not in point.

We turn with reluctance from these considerations of law and from the decision of the trial judge

to a consideration of the effect of the negotiable instruments law.

We quote section 6055, 2 Comp. Laws 1915:

"SEC. 16. Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature, in order that the paper may be converted into a negotiable instrument, operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given, and within a reasonable time; but if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given, and within a reasonable time."

Under this section, if defendant is a holder in due course, the note is good in her hands although it was not filled up by Mears strictly in accordance with the authority given by plaintiffs to him. If defendant is not a holder in due course, then, as plaintiffs became parties before completion, the note may not for reasons stated be enforced against them.

The negotiable instruments law defines a holder in due course, section 6093, 2 Comp. Laws 1915:

"SEC. 54. A holder in due course is a holder who has taken the instrument under the following conditions:

"First, That it is complete and regular upon its face;

"Second, That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third, That he took it in good faith and for value;

"Fourth, That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We quote section 6098, 2 Comp. Laws 1915:

"SEC. 59. A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

In a similar case under the negotiable instruments law, *Vander Ploeg* v. *Van Zuuk, supra,* it was said of the statute:

"It seems to us under these definitions and the applications thereof that the plaintiff was a holder of the note, but not a holder in due course. The latter term seems unquestionably to be used to indicate a person to whom after completion and delivery the instrument has been negotiated. In the ordinary case the payee of the instrument is the person with whom the contract is made, and his rights are not in general dependent on any peculiarities in the law of negotiable instruments. The peculiarities of that law distinguishing negotiable instruments from other contracts relate to a holder who has taken by negotiation, and not as an original party. This is the construction put on the same phrase used in the English negotiable instruments act by Lord Russell, Ch. J., in *Lewis* v. *Clay,* 67 L. J. Q. B. (N. S.) 224, in which he says: ' "A holder in due course" is a person to whom, after its completion by and as between the immediate parties, the bill or note has been nego-

tiated. In the present case the plaintiff is named as payee on the face of the promissory note, and therefore is one of the immediate parties. The promissory notes (held and sued on [by the person named as payee therein]) have in fact never been negotiated within the meaning of the act.' "

And it was held:

"We see no escape from the conclusion that, under the statute, plaintiff, being not a holder in due course, but the person to whom the note was made payable, and to whom it was delivered as an effective instrument, took it subject to the defense * * *."

We quote from 1 Joyce, Defenses to Commercial Paper (2d Ed.), p. 136:

"But, where a note was signed in blank and delivered to another who filled in the blanks, making plaintiff in an action on the note the payee, the latter was not a holder in due course, and it was not enforceable against the signers, if it was not filled in in accordance with instructions of or agreement with the signers."

See 1 Daniels, Negotiable Instruments (6th Ed.), p. 195; *Exchange Bank* v. *Robinson*, 185 Mo. App. 582 (172 S. W. 628) ; 3 R. C. L. p. 1031.

We quote from syllabus of *Hartington Nat. Bank* v. *Wiebelhaus*, 31 L. R. A. (N. S.) 130 (88 Neb. 47, 128 N. W. 659, Ann. Cas. 1912 B, 1008) :

"Defendant signed a promissory note which was perfect on its face, with the exception of a blank for the name of the payee, and intrusted it to his co-maker, who delivered it in that form to a bank two days later, before it was due, in violation of an agreement that it should be used by him in buying a meat market, that the name of the seller should be inserted in the blank, and that the note should be returned to defendant if not used for that purpose.

The bank accepted the note at its face value, and afterward inserted its own name in the blank as payee. Held that the instrument is not enforceable against defendant within the meaning of that part of the negotiable instruments law relating to the filling of blanks, and containing among other things the following provision: 'In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given, and within a reasonable time.' "

As suggested in the *Vander Ploeg* decision, exceptional cases may arise where a payee may be held to be a holder in due course, but the case at bar is not exceptional. 8 C. J. p. 468. Under the law and the facts above set forth, defendant payee cannot be held to be a holder in due course. The note (and mortgage) in her hands is open to plaintiffs' equities, which must prevail.

No other matter requires discussion.

Reversed. Plaintiffs will have decree for relief prayed, with costs.

WIEST, C. J., and BUTZEL, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.

FEAD, J. (*concurring in reversal*). I concur in the result, reserving, however, for consideration in a proper case, the question whether a payee of a negotiable instrument, taking without notice of its incomplete character when signed by the maker, may be a holder in due course.

McDONALD and NORTH, JJ., concurred with FEAD, J.