GREER v. PARKS.

1. Conspiracy—Pleading.

Characterizing an action as one for conspiracy without giving supporting facts in a declaration is insufficient upon which to base a judgment in conspiracy, as such a judgment must be based on testimony and not on general words in a declaration.

2. Pleading—Signature to Written Instrument.

In action against brokerage firm, its customer's man, and person with whom plaintiff had intrusted his certificates of stock, in which defendant broker and its customer's man answered that they had disposed of the proceeds of the sale of the stock in a manner authorized by plaintiff in writing, reply of plaintiff that he had no knowledge of ever having signed it and that if his signature is attached, he signed it without knowing the purport thereof is accepted as pleading for what it is worth but without commendation (Court Rule No. 23, § 2 [1933]).

3. Alteration of Instruments—Authority—Blanks.

One who intrusts an incomplete instrument, to which he has affixed his signature, to another to be completed and delivered by the latter is bound to anyone who relies in good faith on the genuineness of such instrument, although the person intrusted with completion and delivery has exceeded his authority.

4. Same—Negotiable Instruments—Guaranty—Third Party's Knowledge of Incompleteness—Authority.

Except for negotiable instruments and contracts of guaranty it is immaterial whether third person knew that an instrument was incomplete when signed by party to be charged, since the third person has a right to assume that the person in

---

Completion of written contract containing blanks, see 2 Restatement, Contracts, § 442.

whose hands it was placed for final execution had authority to do what he did do in making it an effectual instrument and is not charged with knowledge of any limitation upon such authority (2 Comp. Laws 1929, § 9263).

5. SAME—GUARANTY—FILLING IN BLANKS.

The filling in of a blank even in accordance with the guarantors' understanding constitutes a material alteration discharging them if done after they have affixed their signatures.

6. BROKERS—POWER OF ATTORNEY—BLANKS.

A blank power of attorney, signed by owner of stock and directed to stockbroker, which, when filled out, authorized stockbroker to apply proceeds at direction of holder of the power of attorney, was binding upon such owner where application of proceeds was made pursuant to holder's directions.

7. FRAUD—PRESUMPTIONS.

Fraud is not lightly presumed but must be proven.

8. BROKERS—FRAUD—CERTIFICATES INDORSED IN BLANK—POWER OF ATTORNEY—FILLING IN BLANKS.

Owner of stock who had indorsed certificates in blank may not claim fraud on the part of stockbrokers who applied proceeds from sale thereof in accordance with directions given owner's agent by a power of attorney directed to stockbroker and signed by owner in blank, which was filled in thereafter at broker's place of business.

9. SAME—FRAUD—CONSPIRACY—EVIDENCE.

In action against stockbrokers and their customer's man for alleged fraud and conspiracy, record *held*, not to contain testimony of either fraud or conspiracy on the part of such defendants.

10. SAME—ESTOPPEL OF STOCK OWNER—FRAUD.

Silence for a number of years on part of stock owner who had indorsed stock in blank and signed blank power of attorney enabling holder of stock to control proceeds from sale thereof *held*, to indicate that either the owner's agent carried out what he was authorized to do or was guilty of fraud without the connivance of customer's man and broker to whom power of attorney was addressed.

Appeal from Wayne; Spier (James E.), J., presiding. Submitted January 8, 1942. (Docket No. 59, Calendar No. 41,784.) Decided February 11, 1942.

Case by Allie Greer against Henry B. Parks, J. Roy Boone, and Douglass M. Bomeisler and others, limited partners doing business as E. A. Pierce & Company, for conspiracy to defraud. Verdict and judgment for plaintiff against defendant Henry B. Parks. Directed verdict and judgment for all other defendants. Plaintiff appeals. Affirmed.

*Fred H. Aldrich,* for plaintiff.

*Bulkley, Ledyard, Dickinson & Wright* (*George Haggarty* and *Max L. Veech,* of counsel), for defendants Boone and E. A. Pierce & Company.

BUTZEL, J. Plaintiff Allie Greer was proprietor of a gas station near Birmingham, Michigan. He owned six small houses and at various times had acquired stock in corporations, including 1,030 shares of stock in the Packard Motor Car Company. Because he had the highest regard for the father-in-law of defendant Henry B. Parks, and also because Parks was connected with a Detroit bank, he used Parks's services in selling the 1,030 shares of Packard Motor Car Company's stock. Parks stopped periodically at Greer's station to purchase gas. Greer first asked Parks to dispose of 130 shares. This was done and the proceeds returned to plaintiff. In February, 1935, Greer asked Parks to sell for him the remaining 900 shares of Packard stock. He indorsed in blank the nine certificates for 100 shares each and delivered them to Parks for the purpose of selling them for him. Parks took them to the Detroit office of E. A. Pierce & Company, a brokerage firm, where he saw defendant J. Roy Boone, who was customer's man for the brokers. Greer testified that his reason for selling the stock was because he wanted to use the money to com-

plete a house in course of construction, but that in June, three months later, he told Parks not to dispose of the stock and asked Parks to return it, whereupon he claims that Parks told him that it was perfectly all right to leave the stock at the brokerage firm for safekeeping, and that it could be disposed of any time he directed. In February, 1935, at the time Parks brought the stock indorsed in blank to the defendant brokers, the disposition of the proceeds of the stock must have been discussed. Parks evidently wanted the proceeds to be credited to him, whereupon the brokerage firm, possibly as an extra precaution, asked an authorization from Greer. Parks was furnished with a printed form which he returned signed by what purports to be Greer's signature. The printed form (exhibit 1) is as follows (the words in italics were written in after the form was brought back to the Pierce office):

"E. A. PIERCE & CO.
"Gentlemen:
"With respect to certificate No. *D. 40734/42 x 100 each* representing *900* shares of *Packard Motor Car Co.* stock standing in my name and delivered to you through M*r. Henry P. Parks* I hereby authorize you to dispose of same or the proceeds thereof and any income therefrom in any manner *he* may direct, including a credit therefor to *his* personal account with you, and I hereby approve and confirm any accounting respecting same made to the said *Henry B. Parks* and accept the same to your full discharge.

Very truly yours,<br>
ALLIE G. GREER.

(Signed)   *H. B. Parks.*
(Signed)   *J. Roy Boone.*"

Exhibit 1 at the bottom of the sheet contains a printed form for acknowledgment, but was not filled out. The signatures of Parks and Boone were

also added at the brokerage office, but the record does not show for what purpose. There is no claim that Boone saw Greer sign the document. The stock was sold by E. A. Pierce & Company for $3,409.91, the last 100 shares being sold on April 24, 1935, at a time during which under the undisputed testimony Greer had ordered the stock to be sold and prior to the time in June when Greer claims he revoked the order. Plaintiff claims that the first time he learned that the stock had been disposed of was in February, 1936. He, however, did nothing to contact E. A. Pierce & Company. There is no claim that the brokers failed to confirm the sale to Parks or to account to him for the entire proceeds of the stock. In fact, the sums so realized, together with some $5,000 Parks was able to obtain from other sources, were credited to Parks's account by the brokers so that he was able to trade in stocks from time to time, or withdraw the moneys to his credit. After trading in stocks on rather a large scale, he bought and sold grain futures on margin. The account was closed after Parks had suffered losses. However, besides drawing moneys from time to time from his credit at E. A. Pierce & Company, about July 1, 1936, Parks drew $1,964, the balance to his credit. We accept Greer's statement that Parks paid no part of this sum or any other sums to Greer, though Parks testified he paid him $400 at one time. Sometime later, Parks instituted a suit against the brokerage firm, claiming that it had not given him correct information. The suit was settled for $750, Parks executed a complete release to E. A. Pierce & Company, and the suit was discontinued.

Plaintiff knew of this suit, but neither during its pendency nor at any other time until on or about June 1, 1939, did he make any claims against E. A. Pierce & Company or Boone, their agent. Greer

knew after February, 1936, that his stock had been
sold by E. A. Pierce & Company, and later that
Parks had sued the brokerage firm, but remained
silent. Greer brought the present suit solely on the
ground of conspiracy between Parks, Boone, and
E. A. Pierce & Company. It was difficult to pin
Greer down as to just what the conspiracy con-
sisted of as the declaration is very indefinite. Char-
acterizing an action as one for conspiracy without
giving supporting facts in a declaration is insuf-
ficient, but even should the allegations be deemed
barely sufficient, judgments must be based upon the
testimony, not on general words in a declaration.
The judge directed a verdict for defendants E. A.
Pierce & Company and Boone. Verdict and judg-
ment were rendered against Parks. Plaintiff ap-
peals and claims that E. A. Pierce & Company and
possibly Boone should also have been held liable.

Viewing the testimony in the most favorable light
toward plaintiff, we nevertheless find no ground for
the claim of conspiracy. In their answer to plain-
tiff's declaration, appellees Boone and E. A. Pierce
& Company set forth exhibit 1 to show that they
disposed of the proceeds from the sale of stock
in the manner indicated by Greer. Plaintiff in his
reply to the answer of E. A. Pierce & Company
states in regard to exhibit 1 that he has no knowl-
edge of ever having signed it, and that if his sig-
nature is attached thereto, he signed it without
knowing the purport thereof but that it must have
been presented to him for signature when the cer-
tificates of capital stock were presented to him for
indorsement. He does not deny that it is his sig-
nature. It is very doubtful whether this reply con-
forms to Court Rule No. 23, § 2 (1933), which calls
for explicit denial or at least a statement of in-
sufficient knowledge to form a belief in reply to

material allegations. See *Detroit Trust Co.* v. *Hockett*, 278 Mich. 124. Also, see *Distasio* v. *Gervasio*, 234 Mich. 482. However, as Greer did not deny that it was his signature and admitted that it looked like it, we accept the pleading for what it is worth, but not with any commendation of such loose practice in procedure. Exhibit 1 was executed in blank. It was given to Parks to whom Greer had delivered the certificates of stock indorsed in blank.

One who intrusts an incomplete instrument, to which he has affixed his signature, to another to be completed and delivered by the latter, is bound to anyone who relies in good faith on the genuineness of such instrument, although the person intrusted with the completing and delivering of the instrument has exceeded his authority. And it is immaterial whether the third person knew that the instrument was incomplete when signed, since he has a right to assume that the person in whose hands it was placed for final execution had authority to do what he did do in making it an effectual instrument, and is not charged with knowledge of any limitation upon such authority. *Vander Ploeg* v. *Van Zuuk*, 135 Iowa, 350 (112 N. W. 807, 13 L. R. A. [N. S.] 490, 124 Am. St. Rep. 275), quoted in *Bronson* v. *Stetson*, 252 Mich. 6, 8, 9. This rule was changed by statute but only as to negotiable instruments (2 Comp. Laws 1929, § 9263 [Stat. Ann. § 19.56]). With respect to contracts of guaranty, the common law imposes a stricter rule: the filling in of a blank even in accordance with the guarantors' understanding constitutes a material alteration discharging them if done after they have affixed their signatures. *McConnon & Co.* v. *Mench*, 235 Mich. 640 (48 A. L. R. 737). The document in question, a power of attorney, is neither a negotiable instru-

ment nor a contract of guaranty, and is, therefore, governed by the common-law rule stated in *Vander Ploeg* v. *Van Zuuk, supra,* quoted in *Bronson* v. *Stetson, supra.*

Plaintiff, however, claims fraud on the part of Parks, E. A. Pierce & Company, and their agent. Fraud is not lightly presumed; it must be proven. We are unable to follow plaintiff's theory as to just what the fraud and conspiracy on the part of E. A. Pierce & Company and Boone consisted of. Under the law there could be no fraud claimed in filling in the blanks of exhibit 1 when Parks brought in the certificates indorsed in blank and the proceeds could have been paid to Parks by E. A. Pierce & Company without knowledge of any limitation on Parks's authority. See *Austin* v. *Hayden,* 171 Mich. 38 (Ann. Cas. 1915 B, 894); *Peckinpaugh* v. *H. W. Noble & Co.,* 238 Mich. 464 (52 A. L. R. 941). The case of *Detroit Trust Co.* v. *Struggles,* 289 Mich. 595, is not at all applicable. Plaintiff gave various stories as to just what occurred. He testified that he gave the stock to Parks to sell so that the proceeds could be used to pay the cost of construction of the home that Greer was building for himself; again, in referring to Parks, that if Parks sold the stock, that he was to loan Parks the proceeds in order that Parks could buy stocks but not gamble. (He later instructed Parks to return the stock, but not until the stock had already been sold.) He again testified that he authorized Parks to trade with the stock and offer it as collateral for a loan; also that prior to June, 1935, he told Parks that he would lend him money on the stock but, when asked how that could be done, he stated that he supposed it could be put up for collateral. When finally pressed for a statement as to what he based his claim as to conspiracy to defraud on, he stated it was

because E. A. Pierce & Company had made misrepresentations to Parks. This might constitute a cause of action by Parks against E. A. Pierce & Company, but not by plaintiff after settlement of the suit and release by Parks. Plaintiff in his declaration states that the stock was indorsed in blank to enable Parks to sell it for plaintiff and to return the cash received therefor to him. We shall not discuss further details. After careful examination of the entire record, we find no testimony indicating fraud or conspiracy on the part of E. A. Pierce & Company or their agent.

The question of estoppel is not raised, but plaintiff's silence during all the years that intervened, during which a single word of complaint by him to E. A. Pierce & Company might have stopped payments by E. A. Pierce & Company to Parks, indicates that either Parks carried out what he was authorized to do or was guilty of fraud without the connivance of E. A. Pierce & Company and their agent Boone.

The judge was correct in directing a verdict in favor of defendants E. A. Pierce & Company and Boone. The judgment is affirmed, with costs.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.