SHADE, Respondent, v. BARNES BROTHERS et al.,
Appellants.

(151 N. W. 42.)

(File No. 3637.    Opinion filed February 13, 1915.)

1.  Mortgages—Agent to Receive Loan Payment—Mortgagee's Knowledge of Agency—Effect of Payment to Others—Want of Consideration.

    Where plaintiff's application for a loan, to be secured by mortgage upon her land, appointed a particular person her

agent to receive the money, **held**, that the mortgagee, having received the application, had notice of its contents, and payment to any other than the agent named was at mortgagee's risk of rendering the mortgage and notes void for want of consideration.

**2.   Negotiable Instruments—Bona Fide Holder—Re-indorsement Back to Payee—Defense Against Payee as Indorsee.**

A mortgage note, void for want of consideration and transferred to a bona fide holder in due course before maturity, and thereafter re-transferred by indorsee to the payee, is subject, in the hands of the latter, to the same defenses that existed when the payee first held it.

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Josephine Shade against Barnes Brothers, a corporation, and Charles Schmit, to procure cancellation of realty mortgage and note secured thereby. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

*Johnson, Brown & Johnson,* and *A. M. Bayer,* for Appellants. *T. H. Conniff,* and *Harry P. Atwater,* for Respondents.

(1) Under point one of the opinion, Appellant cited: Enc. Pl. & Prac. Vol. 27, p. 150b; Charles H. Dart v. Minnesota Loan & Trust Company, 74 Minn. 426; Boyd v. Boyd, 104 N. W. 794 (Ia.); Clark & Skyles on Agency, Vol. 1, Sec. 45; Equitable Mortgage and Loan Company v. Thorne, 26 S. W. 276 (Texas); Henken v. Schwicker, 73 N. Y. Supp. 656, 67 App. Div. 196, affirmed in 66 N. W., p. 971, 174 N. Y. 298; Cooper v. Headley et al., 12 N. J. E. 48; Barksdale v. The Security Investment Company, 47 S. E. 943, 120 Ga. 388; Cox v. Massachusetts Mutual Life Insurance Company, 113 Ill. 382.

Respondent cited: Barnard v. Coffin, 141 Mass. 37, 55 Am. Rep. 444; Bleeker v. Satsop R. Co., 27 Pac. 1073; Kornemann v. Monaghan, 24 Mich. 36.

(2) Under point two of the opinion, Appellant cited: Civ. Code, Secs. 2182, 2198, 2200.

Respondent cited: 27 Cyc. 1050, 1054; Security Co. v. Kent, 83 Ia. 30, 48 N. W. 1047; Talbert v. Singleton, 42 Cal. 396; 23 Am. & Eng. Enc. 478; 39 Cyc. 569.

GATES, J. On or about April 1, 1913, respondent applied

to S. E. Sanders of Wall, S. D., for a loan upon 160 acres of land owned by her. She caused a formal application to be executed, which contained, among other things, the following:

"The statements made in this application are made by me for the purpose of obtaining a loan of money from John Hayes of Fort Pierre, South Dakota, and are true to the best of my knowledge and belief. * * * I hereby appoint and constitute S. E. Sanders, my agent, for the purpose of procuring said loan, and to whom I do hereby grant full authority to receive the funds herein applied for. Payment to my said agent of the amount due me under this loan shall be construed and held to be sufficient consideration for the execution and delivery to the mortgagee of the papers given for said loan."

This application was forwarded to John Hayes of Ft. Pierre. Mr. Hayes procured an abstract of title, approved the loan, and sent to respondent two mortgages for execution, both running to appellant Barnes Bros., a corporation, one for the sum of $350, and one for the sum of $43.75. Upon the return of the executed mortgages to him, Mr. Hayes sent all of the papers, including the application, to Barnes Bros., of Minneapolis, with instructions to deposit the money in a bank at Minneapolis to the credit and advice of the Citizens' State Bank of Ft. Pierre, of which Mr. Hayes was president. About that time the bank at Ft. Pierre was taken in charge by the State Bank Examiner, who has proceeded to wind up the affairs of the bank. The proceeds of the loan have never been paid to respondent nor to her agent, S. E. Sanders, but it is claimed by appellants that the money was virtually paid to respondent by reason of the fact that the books of the bank at Ft. Pierre show a credit to her. This action was begun in July, 1913, for the purpose of canceling said mortgages of record. It was alleged in the complaint that Barnes Bros. assigned the first mortgage to appellant Charles Schmit, by assignment duly recorded. Said defendant answered, separately admitting that the mortgage had been assigned to him, alleged that, before the commencement of the action, he had resold the same to Barnes Bros., and he disclaimed any interest therein. Trial was had by the court, which made findings of fact and conclusions of law for the plaintiff, and entered judgment canceling the said mortgages of record. From the judgment and order

denying a new trial, defendants appeal.

[1] As we view this case, there are only two questions of importance to decide. The first relates to the authority of the mortgagee to pay the proceeds of the loan to any person other than the plaintiff or the agent Sanders. Our attention has been called to a number of decisions, where the actual custodian of the money failed to account to the borrower, and to decisions where the question of usury was involved, and to decisions where the question of knowledge of an incumbrance by the loan agent was involved, all of which we have carefully examined. But the principle involved in this case was absent from those cases. Here the question is: To whom should Barnes Bros. have paid the money? The claim of appellants that the corporation, Barnes Bros., was an innocent purchaser for value from Hayes is not sustained by the proof. It was the original mortgagee. Hayes was simply an agent. Whether he was agent for it or for the borrower in procuring the loan is immaterial in this case. If he was agent for the borrower, payment to him might, under certain circumstances, be held to be payment to the borrower. In the absence of a provision in the application for the loan designating the party to whom payment should be made, the lender, upon the authority of the cases cited, might have been protected by payment to John Hayes. But here there was a positive appointment of S. E. Sanders as agent to receive the money. The lender received this application. It must be held to be charged with knowledge of its contents. Whatever relation Hayes or the bank at Ft. Pierre bore to the respondent in the making of this loan, such relation did not authorize Barnes Bros. to make payment to them in the face of an explicit written declaration making Sanders her agent for the purpose of receiving the money. We are therefore compelled to hold that in failing to pay the money to the agent Sanders, or to the plaintiff, the appellant Barnes Bros. made payment to Hayes or the bank at Ft. Pierre, if it did so, at its own risk. Until the proceeds of the loan were paid to the borrower or to her agent Sanders, there was no completion of the loan on the part of the lender. Therefore there was no consideration for the notes and mortgages given by the respondent to Barnes Bros. 27 Cyc. 1054.

[2] But it is contended that, even if the mortgages were invalid, the first mortgage of $350 was assigned to Schmit, a bona fide holder in due course before maturity, and that, when Schmit resold and assigned the same to the corporation Barnes Bros., it took the mortgage freed from any defense that may have existed when it first held the paper. Some of the sections of the Negotiable Instruments Act of 1913 (Laws 1913, c. 279) are cited in support of this contention. That act was not in force when this transaction was had. We are of the opinion that in repurchasing the paper Barnes Bros. took it subject to the same defenses that existed when it first held it. We approve the reasoning of Mr. Justice Cooley on this subject in Kost v. Bender, 25 Mich. 515, viz. :

"It is perfectly true, as a general rule, that the bona fide holder of negotiable paper has a right to sell the same, with all the rights and equities attaching to it in his own hands, to whoever may see fit to buy of him, whether such purchaser was aware of the original infirmity or not. Without this right he would not have the full protection which the law merchant designs to afford him, and negotiable paper would cease to be a safe and reliable medium for the exchanges of commerce. For, if one can stop the negotiability of paper against which there is no defense, by giving notice that a defense once existed while it was held by another, it is obvious that an important element in its value is at once taken away. But I am not aware that this rule has ever been applied to a purchase by the original payee, nor can I perceive that it is essential to the protection of the innocent indorsee that it should be. It cannot be very important to him that there is one person incapable of succeeding to his equities, and who consequently would not be likely to become a purchaser. If he may sell to all the rest of the community, the market value of his security is not likely to be affected by the circumstance that a single individual cannot compete for its purchase, especially when we consider that the nature of negotiable securities is such that their market value is very little influenced by competition. Nor do I perceive that any rule or principle of law would be violated by permitting the maker to set up this defense against the payee, when he becomes indorsee, with the same effect as he might have done before it had been sold at all,

or that there is any valid reason against it.   *   *   *   If the defendant had a legal and just defense to the note, either in whole or in part, arising from the conduct of the plaintiff, it was the duty of the latter to recognize and allow it, and he had no moral right to cut it off, or to attempt so to do, by any transfer. But having done so, and afterwards acquired the note the second time, the law, we think, will not permit him to take advantage of this wrong, but will remit the defendant to his original rights.  Such, we think, should be the rule, because it avoids circuity of action, expense to the parties, and inconvenience to the courts, without, at the same time, endangering any substantial rights."

See, also, note 54 L. R. A. 673.

Considerable evidence was received, both oral and documentary, that was not admissible. But there was sufficient competent evidence to sustain the findings and decision of the trial court.

Finding no prejudicial error, the judgment and order appealed from are affirmed.