BRITTON MILLING COMPANY, Appellant, v. WILLIAMS, Respondent.

(184 N. W. 265.)

(File No. 4820.   Opinion filed August 31, 1921.   Rehearing granted November 9, 1921.)

1.  Negotiable Instruments—For Corporate Stock, Recovery On, Defense of False Representations Re Milling Stock, Alleged Superior Milling Advantages Re Grain Prices, Interest-bearing Shares, Whether Representations of Existing Facts, Whether Extravagant.

In a suit on a note the consideration for which was milling stock, the defense being that false and fraudulent representations were made concerning the capital stock of the milling company, that the company was about to take over certain local flouring mill, that arrangements had been made with a railway company to build a spur to the mill, which would enable the resident stockholders to ship grain directly to the mill, that said millers would pay stockholders a higher price for grain raised by them, and would ship to nearby points feed for stock sold at cost, that if defendant would subscribe for 5 shares of par value of $25 each and pay therefor $25 in cash and give a $125 note for balance, the milling company would issue to him stock certificates bearing 8% annual interest, which interest would pay all interest accruing on the note, that stock dividends would pay the principal when due and that said cash and note would be the property of the milling company, and that unless $40,000 worth of stock was subscribed before a specified date defendant's subscription should be void, and that he relied upon said statements, etc., **held**, that plaintiff's contention that said representations were not of then existing

facts but only promises of what would transpire in future, and therefore not actionable, and that the representations were so extravagant and improbable as to be unreasonable, was untenable, save as to amount of dividends that would be paid on the stock, all other representations being of existing facts or promises of acts to be performed by the milling company as considerations for the note; and the parties making the representations must have thought they would influence defendant, else would not have used them.

2.  Same—Whether Representations Made, and Induced Signing of Note, Questions for Jury—Directing Verdict, Error Re.

Whether or not such representations were made, and whether defendant was induced thereby to sign the note, were questions of fact that should have been submitted with proper instructions to jury; this although making of representations was not denied, since, having been set up in defense, defendant had burden of proof to establish same, and whether he maintained such burden was question for jury; and directing of verdict for defendant was prejudicial error.

3.  Same—Note to Milling Company, Defense of Fraudulent Representations of Payee's Agent, Whether Payee Holder "In Due Course."

Plaintiff, payee in the note sued on, defended against on ground of false representations made by plaintiff's agent concerning, the milling company and its advantageous operation, etc., was owner of a certain flouring mill, which was to be taken over by the corporation whose stock was the subject of the alleged misrepresentations, the mill to be purchased with proceeds of sales of such stock, for a part of which stock said note was given but was made payable to the new corporation and accepted by plaintiff in part payment of purchase price of the mill.  Held, that plaintiff was not a holder "in due course" of the note; construing Sec. 52 of Negotiable Instruments Law (Sec. 1756, R. C. 1919), providing that a holder in due course is one who has taken an instrument (1) complete and regular on its face, (2) of which he became holder before overdue and without notice that it has been dishonored, if dishonored, (3) that he took it in good faith for value (4) and that at time it was negotiated to him he had no notice of any infirmity in the instrument or difficulty in title of the person negotiating it; that while under the first 3 subdivisions of said section plaintiff would be a holder "in due course," yet said provisions are qualified by Subd. 4, which contemplates that to be such holder one must have acquired the note by negotiation and transfer from the buyer or a prior endorsee, and not by issue or delivery from maker; that "holder in due course" is applic-

30—Vol. 44, S. D.

able only to one taking an instrument by negotiation from another who is holder; hence the note in suit is subject to same defenses as promissory notes generally are in hands of payee.

Whiting, J., concurring in the result.

Appeal from Circuit Court, Brown County. Hon. FRANK ANDERSON, Judge.

Action by Britton Milling Company, a corporation, against H. J. Williams, to recover upon a promissory note. From a judgment for defendant on directed verdict, and from an order denying a new trial, plaintiff appeals. Reversed.

*Harold W. King,* and *McNulty & Campbell,* for Appellant.

*Campbell & Walton,* for Respondent.

(1)   To point one of the opinion, Appellant cited: Sawyer v. Prickett, 19 Wall. 146, 86 U. S. 146, 22 L. ed. 105; Dawe v. Morris, 149 Mass. 188, 21 N. E. 313, 4 L. R. A. 158.

Respondent cited: 12 R. C. L. p. 261, 373; Sallies v. Johnson (Conn.) Ann. Cases 1913A, p. 386.

(3)   To point three, Appellant cited: Taylor v. National Bank of Dakota, 6 S. D. 511, 62 N. W. 99; Armstrong v. Am. Exchange Nat. Bank, 133 U. S. 433, 33 L. ed. 747; 3 R. C. L. Sec. 238, p. 1031; Vander Ploeg v. Van Zuuk, 135 Ia. 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490.

Respondent cited: 3 R. C. L. Sec. 238, p. 1032; Vander Ploeg v .Van Zuuk, 135 Ia. 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490.

POLLEY, P. J.   'Action to recover on a promissory note. At the close of the testimony the court directed a verdict for the defendant, and from the judgment entered thereon and from an order denying a new trial plaintiff appeals.

The execution of the note by the defendant is admitted, but he claims that he was induced to sign the same by the false and fraudulent representations made by the party to whom he delivered the note, and that there was a lack of consideration for the same. The fraudulent representations claimed to have been made by the party who induced defendant to sign said note are alleged in defendant's answer in the following language:

"For further answer, by way of defense to the claim of the plaintiff herein, this defendant alleges that on or about the 2d day of November, 1917, one O. W. Bucklin visited this defendant, and requested and urged this defendant to subscribe for some

shares of the capital stock of the Britton Co-operative Milling Company; the said O. W. Bucklin claiming to be the agent and representative of the Britton Co-operative Milling Company, a corporation, and in order to induce this defendant to subscribe for the capital stock in said milling company, falsely and fraudulently and for the purpose of deceiving and defrauding this defendant, made to the defendant, in substance, the following statements and promises, to wit:    That the said Britton Co-operative Milling Company had bought and was about to take over the flouring mill located at Britton, S. D.    That the said Britton Co-operative Milling Company had at said time arrangements entered into with the Great Northern Railway Company wherein and whereby a branch or spur railroad line would shortly be constructed by said railroad company from Burch, S. D., a distance of about four miles, and that upon completion of said branch railroad this defendant, if he became a stockholder in said Britton Co-operative Milling Company, and other stockholders residing on the line of the Great Northern Company near which this defendant resided, could and would be able to ship the grain raised by them directly over the Great Northern Railway to such mill at Britton, S. D., and that said Britton Co-operative Milling Company could, by reason of its being a manufacture, pay and would pay to stockholders therein a substantially higher price for grain, especially wheat, raised by them, than could be secured elsewhere.

"The said O. W. Bucklin further promised and represented to this defendant, as an inducement for him to buy stock in said Britton Co-operative Milling Company, that the said company would promptly thereafter ship and send to the Farmers' Elevator Company at Plana, S. D., near which this defendant resided, flour, bran and feed for stock, and that said milling company would sell such feed to those subscribing for stock in the Britton Co-operative Milling Company at cost and for a substantially less sum than it could be purchased for elsewhere.    And the said Bucklin, in order to induce this defendant to subscribe for the shares of capital stock of the said Britton Co-operative Milling Company, further offered and promised this defendant that, if he would subscribe for five shares of such stock of the par value of twenty-five dollars each and pay therefor one hundred and fifty

dollars ($150), twenty-five dollars ($25) thereof to be then paid in cash and the remaining one hundred twenty-five dollars ($125) thereof to be represented by a note to the Britton Co-operative Milling Company, payable January 1, 1919, bearing interest at the rate of 8 per cent. per annum, that such five shares of stock would be, by said Britton Co-operative Milling Company, issued to him at once, and that such stock certificates should and would bear and entitle the defendant to 8 per cent. annual interest, and that the interest accruing to this defendant by virtue of the stock certificates would pay all interest accruing on or to accrue upon the note above referred to, and that the dividends accruing on said stock would be sufficient to pay the principal of said note when the same became due, and further promised and agreed that the stock to be issued to him, this defendant, should be the capital stock of the Britton Co-operative Milling Company and that the twenty-five dollars ($25) cash would be paid to the Britton Co-operative Milling Company, and the note for one hundred twenty-five dollars ($125), which this defendant was asked to execute, would be the property and payable to the Britton Co-operative Milling Company.

"And the said O. W. Bucklin at said time, further promised and agreed with this defendant that, unless the sum of forty thousand dollars ($40,000) worth of the capital stock of said Britton Co-operative Milling Company was taken and subscribed on or before December 1, 1917, his subscription for stock therein should be void. That, relying upon such statements, promises, and agreements so made by the said O. W. Bucklin, and believing them to be true, and not otherwise, this defendant, on said 2d day of November, 1917, paid to the said O. W. Bucklin the said sum of twenty-five dollars ($25), and the said O. W. Bucklin prepared at said time a note for $125, which was agreed to be payable to the Britton Co-operative Milling Company, but which said defendant now ascertained was by said Bucklin wrongfully and fraudulently made payable to Britton Milling Company, this plaintiff, delivered the same to said Bucklin."

It is then alleged that all the promises and agreements made by the said Bucklin were false and untrue, and were made for the purpose of deceiving defendant, and thereby inducing him

to sign the said note; that he believed and relied upon such representations, and was thereby induced to execute said note.

[1-2]    It is the contention of appellant that if the matters set up in the answer were established by the evidence—and appellant does not admit that they are—they are not sufficient to constitute a defense as against the note.   It is claimed by appellant that the representations made by Bucklin were not representations of then existing facts, but were only promises and representations of what was to take place in the future, and therefore were not actionable.   And it is. further claimed that the said representations, if made as claimed, were so extravagant and improbable that no reasonable person could have been influenced thereby. This claim, however, is not true.   Except as to the representations in regard to the amount of the dividends that would be paid on the stock, such representations were in regard to what purported to be then existing facts or were promises of acts to be performed by the Britton Co-operative Milling Company that constitute a part consideration for the note; nor do we believe that such promises were so extravagant or unreasonable that they would not influence an ordinarily prudent person.   Bucklin must have thought they would influence defendant; else, why did he make them? The fact that defendant would receive 8 per cent. on his investment, in addition to the very extravagant dividends promised by Bucklin, may have been one of the inducements that determined defendant to sign the note.   But whether Bucklin made the representations alleged in the answer and testified to by defendant, and whether defendant was induced by such representations to sign the note, are questions of fact that should have been submitted under proper instructions to the jury.   It is true that Bucklin did not deny having made the representations alleged in the answer; but, having been set up by defendant as an affirmative defense, defendant had the burden of proof to establish same, and whether he maintained such burden was a question for the jury.   Plaintiff, by showing the possession and ownership of the note, made out a prima facie case, and this could be overcome only by a preponderance of the evidence in support of defendant's defense.   The court erred in directing the verdict, and a new trial will be granted.

This disposes of the case, so far as this appeal is concerned;

but it is contended by appellant that it is a holder of the note in "due course," and that in its hands said note is not subject to the defense set up by respondent, even though the same were established by a preponderance of the evidence. As this question will come up again in case of a new trial, and as both parties have fully presented it in their briefs, we deem it proper to dispose of it now.

[3] Plaintiff's contention that it is a holder of the note in "due course" is based upon the following facts: Plaintiff appears to have been the owner of a flouring mill at Britton; the Britton Co-operative Milling Company was organized for the purpose of purchasing the mill and taking over the business of the appellant; the purchase was to be made with the proceeds of the sales of capital stock of the latter company; and the note in question was given by respondent in payment for capital stock in said company, but was made payable to the Britton Milling Company, and was accepted by appellant in part payment of the purchase price of the said mill. Whether appellant is a holder in "due course" depends upon the meaning of section 52 of our Negotiable Instruments Law (now section 1756, R. C. 1919.) This section reads as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Under the first three subdivisions of this section appellant would be a holder in "due course," because there is no question that when the note came into plaintiff's possession it was complete and regular upon its face, that it was not overdue and had not been dishonored, and that it had been taken in good faith and for value.

[4] But all of these provisions are qualified by subdivision 4. This subdivision clearly contemplates that, to be a holder in

"due course," the holder must have acquired the note by negotiation and transfer from the payee or a prior indorsee, and not by issue or delivery from the maker. Therefore, under this law, the payee named in a note cannot be a holder in "due course." This precise question has never been passed upon by this court, but in Shade v. Barnes, 35 S. D. 142, 151 N. W. 42, L. R. A. 1915D, 271, we held that the mortgagee named in a real estate mortgage could not be an innocent purchaser for value as against the claims of fraud or no consideration. Vander Ploeg v. Van Zuuk, 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275.

[5] In Herdman v. Wheeler, [1902] 1 K. B. 361, it is held that a "holder in due course" should be construed to be applicable only to one who takes the instrument by negotiation from another who is a holder. Under our Negotiable Instruments Law, and the construction that has been put upon similar laws by other courts, the appellant is not a "holder in due course," and the note is subject to the same defenses that promissory notes generally are in the hands of the payee therein named.

The judgment and order appealed from are reversed.

WHITING, J., concurs in result.

GATES, J. I dissent from that portion of the opinion which directs a reversal. I think the judgment should be affirmed. We fully sustain the views of the trial court and of respondent as to the law of the case. Appellant in its brief treats the questions before us as pure questions of law. It does not contend that the trial court erred because it did not submit to the jury the question whether the representations were made and the question whether respondent relied upon the representations. It contends that the court erred in directing a verdict, because in legal effect the representations made were not representations on which respondent had the right to rely. Indeed, it contends that a verdict should have been directed for it, if a request therefor had been made. In my opinion the reversal is based upon a ground not assigned as error.