BRITTON MILLING COMPANY, Appellant, v. WILLIAMS, Respondent.

(187 N. W. 159.)

(File No. 4820.   Opinion filed March 1, 1922.)

1. **Negotiable Instruments—Note For Corporate Stock, Defense False Representations—Whether Payee Holder in Due Course—Former Decision Construing Statute, Adhered To.**

On rehearing (former decision, 44 S. D. 525, 184 N. W. 265,) former views and decision, to the effect that under Sec. 1756, Code 1919, defining a holder of a note in due course as one who took it without notice of infirmity, or defect in title of person negotiating it, a holder in due course must have acquired note by negotiation and transfer from payee, or from a prior indorsee, and not by issue or delivery from maker—is adhered to; that without eliminating the fourth clause, viz., that at time of negotiation to him he must have had no notice of infirmity in the instrument "or defect in the title of the person negotiating it," no other conclusion can be reached.

2. **Same—"Negotiation" Constituting "Transferee the Holder"— "Transfer" Under Statute as Meaning "Obligation."**

Under Sec. 1734, Code 1919, providing that an instrument is negotiated when transferred from one person to another in such manner as to constitute "the transferee the holder," the word "transferred" refers to a transfer after the instrument has become an **obligation**, and a transfer as so defined is not synonymous with "delivery" or "execute and deliver."

3. **Trial—Suit on Note, Defense, False Representations Not Denied, Evidence Abundantly Sustaining—Properly Directed Verdict— Former Decision Reversed—Representations, Future Happenings, Question For Court.**

On rehearing (former decision, 44 S. D. 464, 184 N. W. 265,) former decision to effect that trial court erred in not submitting issue of false representations to jury, reversed; it appearing that the allegations in the answer, setting up alleged fraudulent representations concerning payee's corporate assets (the note being given for corporate stock,) were not denied by plaintiff and being fully sustained by evidence; hence the only question left was whether the false representations constituted legal fraud; and such was appellant's contention at the trial and under its assignment of error, in which latter it is recited in effect, that the alleged false representations relied on by

defendant were promissory statements "as to future happenings and could not be made the basis of fraud or deceit."

  Whiting, J., dissenting.

  Anderson, J., not sitting.

On rehearing. Former decision adhered to in part, reversed in part.

For former decision, see 44 S. D. 464, 184 N. W. 265.

*Harold W. King, McNulty & Campbell,* (*French, Orvis & French,* and *Caldwell & Caldwell,* appearing as *amici curiae,*) for Appellant.

*Campbell & Fletcher,* (*Bogue & Bogue,* appearing as *amici curiae,*) for Respondent.

(1) To point one of the opinion, French, Orvis & French, as amici curiae, on behalf of Appellant cited: Sec. 1892, Code 1919; Sec. 1763; Builder's Lime & Cement Co. v. Weimer, 170 Ia. 444, 151 N. W. 100; Brannon on Negotiable Instruments Law, Sec. 52.

Appellant cited:

Respondent cited: Sec. 1756, Code 1919; McCormick Harvester Co. v. Taylor (N. D.), 63 N. W. 890; Bradshaw v. Miners Bank of Joplin, 81 Fed. 902; Creighton Plow Co. v. Davidson (Neb.), 20 N. W. 256; Bank of Gresham v. Walch (Oreg.), 147 Pac. 530; Vanderploeg v. Van Zook, 135 Ia. 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490; Secs. 1718, 1719, Code 1919; 15 Am. Law. Rep. 437.

(2) To point two, French, Orvis & French, as amici curiae, on behalf of Appellant cited: Sec. 1734, Code 1919; Redfield v. Wells, (Ida.) 173 Pac. 640; 8 C. J. 469, Sec. 686; Simpson v. First Nat. Bank (Oreg.) 185 Pac. 913.

Appellant cited: 8 C. J. 469, Sec. 686; cases and authorities cited amici curiae, supra.

Respondent cited: Vol. 7 Cyc., pages 783, 791, 810, 812, 818, on subject Transfer of Commercial Paper; Secs. 1753, 1754, 1892, Code 1919; 8 C. J. Secs. 508, 509.

POLLEY, J. This case is before the court on rehearing. The former opinion was filed on the 31st day of August, 1921, and will be found reported in 184 N. W. at page 265.

The second proposition considered by the court on the former hearing—relating to commercial paper—was regarded as of so much importance to the bar and the commercial interests of the

state that several law firms asked and were granted permission to appear as amici curiæ, and take part in presenting the case at the rehearing. Pursuant to such permission the firms of French, Orvis & French and Caldwell & Caldwell, each filed a printed brief, and took part in the oral argument on behalf of the appellant, while Mr. Alan Bogue, of Bogue & Bogue, filed a printed brief and took part in the oral argument on behalf of the respondent.

[1] Counsel on behalf of respondent very earnestly contend that this court is not only in error, but out of harmony with the weight of authority in our construction of section 1756, Rev. Code (section 52, Un. Neg. Inst. Act). The adjudicated cases touching upon this question have been collected and presented to the court. So far as available, we have examined these cases. While we agree with the result reached in a great many of the cases cited by appellant, we think the result should have been reached by the application of the doctrine of estoppel rather than by the construction put upon section 1756.

Our attention has been called to the recent case of Merchants' Bank v. Smith, 59 Mont. 280, 196 Pac. 523, 15 A. L. R. 430. Appended to this case in 15 A. L. R. is a very complete and comprehensive note. All the cases on the subject are collected and reviewed, and, after reviewing such, the annotator reaches this conclusion:

"It thus appears that opinion is quite evenly divided on the question under annotation. A logical construction of the Negotiable Instruments Act supports the conclusion reached by those courts which hold that the payee in whose hands the instrument had its inception cannot be a holder in due course under the Act. * * * Throughout the act a holder in due course is treated as one to whom the instrument has been negotiated by one in whose hands it was an obligation. Vander Ploeg v. Van Zuuk (1907) 135 Iowa, 350, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275, 112 N. W. 807; Builders' Lime & Cement Co. v. Weimer (1915) 170 Iowa, 444, 151 N. W. 100, Ann. Cas. 1917C, 1174; Southern Nat. Life Realty Corp. v. People's Bank (1917) 178 Ky. 80, 198 S. W. 543; St. Charles Sav. Bank v. Edwards (1912) 243 Mo. 553, 147 S. W. 978; Bank of Gresham v. Walch (1915) 76 Or. 272, 147 Pac. 534; Britton Mill. Co. v. Williams (1921, S. D.)

184 N. W. 265; Lewis v. Clay (1897) 67 L. J. Q. B. N. S. (Eng.) 224, 77 L. T. N. S. 653, 14 Times L. R. 149, 46 Week. Rep. 319; Herdman v. Wheeler, [1902] 1 K. B. (Eng.) 361, 5 B. R. C. 651, 71 L. J. K. B. N. S. 270, 50 Week. Rep. 300, 86 L. T. N. S. 48, 18 Times, L. R. 190."

And it seems to us that, without eliminating the fourth clause of section 1756, no other conclusion can be reached.

We have before us the case of Bank of Commerce v. Randell, 186 N. W. 70, just decided by the Supreme Court of Nebraska. In that case the court holds that a payee of a promissory note may be a holder in due course, but it reaches this conclusion by changing the wording of the first sentence of section 1756, Rev. Code 1919 (section 5370, Rev. St. Neb. 1913), which reads as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions"

—so as to make it read as follows:

"A holder in due course is a payee or indorsee of a bill or note, 'who is in possession of it, or the bearer thereof,' who has taken the instrument under the following conditions:"

This is reading into the law something that the Legislature did not put there, and materially changes the meaning of the sentence. This we do not feel called upon, or at liberty, to do. The meaning of the section is easily ascertainable, and interpolation or elimination is wholly unnecessary, and, in our opinion, not permissible.

[2] Counsel for appellants strenuously contend that their position is warranted by that portion of section 1734, R. C. 1919 (section 30, Un. Neg. Inst. Act), which reads as follows:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder."

This claim is based upon the theory that transfer as used in this section is synonymous with delivery or "execute and deliver." This section will bear no such construction. It must be borne in mind that such words as "execute," "transfer," "negotiate," and others as they are used in the Negotiable Instruments Act, are technical terms—highly technical—and are used in the Act in their technical sense. While the word "transfer" is broad enough to comprehend any physical movement of an object from one place to an-

other or from the hands of one person to the hands of another person, it has no such meaning in the Negotiable Instruments Act. "Transfer," as used in the act takes place after an instrument has become an obligation, and it never becomes an obligation until after it has passed beyond the control of the maker. It can be "transferred" or "negotiated" within the meaning of the statute only by a person in whose hands it is an obligation. Upon this question we are satisfied with the conclusion reached in our former opinion.

[3] Upon further consideration, we believe we were in error in holding that the case should be reversed because not submitted to the jury. The allegations in the answer setting up the alleged fraud are not in any wise denied by the plaintiff. These allegations were fully sustained by the evidence of the defendant, and corrobated by another witness who was present when the alleged fraudulent representations were made. It is true the corroborating witness was the father of defendant. But in one respect at least defendant was corroborated by written evidence. Defendant testified that when he subscribed for the stock Bucklin promised to issue the stock immediately and he gave to defendant a written receipt, which stated that the stock would be issued immediately, but it was shown at the trial that the stock was not issued for some 16 months thereafter. Another representation of a then existing fact that was made by Bucklin, and one that was relied upon by defendant was the statement that arrangements had been made to build a railroad from Burch to Britton. This statement was proven to be false by a member of the board of Directors of plaintiff company, who testified that he knew nothing of any such arrangement ever having been made.

Bucklin was not put upon the stand to deny any of the statements or representations attributed to him, nor was it shown that his testimony could not be procured. That left only the question whether the said false representations were such as would constitute legal fraud, and this is the position taken by appellant at the trial. In its assignment of error appellant says:

"There was no evidence showing that any representation of fact made by the agent Bucklin was false, and the promises and the statements claimed by defendant to have been made by Bucklin, and which he relied upon, and which were false, were promis-

sory statements as to future happenings, and could not be made the basis of fraud or deceit."

As further showing this was the position of the appellant at the trial, appellant contends in this court that, upon the evidence as it stood at the time defendant moved for a directed verdict, plaintiff was entitled to a directed verdict in its favor. If appellant was entitled to a directed verdict, it is because there was no question of fact to be decided and, if there was no issue of fact to be determined, there was nothing for the court to submit to the jury. Under these circumstances the court was warranted in directing a verdict for defendant.

The judgment and order appealed from are affirmed.

ANDERSON, J., not sitting.

WHITING, J. (dissenting.) I am unable to agree with the result reached by my colleagues; though I fully agree that plaintiff is not a holder in due course.

In the former opinion of this court, the majority were of the view that the trial court erred in directing a verdict, and based such holding on the ground that the representations made to defendant were not such as could form the basis of a claim that the note was procured through fraud and deceit. With the result then reached I agreed; although I could not subscribe to some of the reasoning found in the majority decision.

Respondent virtually concedes that there is but one representation upon which he can rely in support of the action of the trial court—this is evidenced by his brief, wherein he relies solely upon the alleged representation that the certificate of stock would be issued at once. This representation or promise was not fulfilled; but, even so, how can it support a directed verdict in favor of the defendant? There is no evidence but that, at the time this promise was made, it was made in good faith, with full expectation that it would be carried out. If it was promised that the stock should bear 8 per cent. interest, and the certificate which was thereafter issued failed to so provide, I know of no rule of law that would allow the defendant, after receiving the stock, to retain the same and refuse to pay any part of the note given therefor. At best, we have proven but a partial failure of consideration. Defendant never attempted to rescind the contract by returning or offering to return the stock and demanding back

his note; in fact, he produced the certificate of stock and introduced it in evidence upon this trial.

Although no other representation seems to be relied on by respondent in his brief, let us note the others. One representation was that the note should be void if a certain amount of stock was not subscribed at a certain time. There was evidence, sufficient to go to the jury, showing that the amount was oversubscribed at that time. All the other representations were but promises or representations as to the future. There was not one word to show that they were known to be false by the party making them; and, so far as they constituted promises, there was no evidence to show that it was not expected by the promisor that the promises would be carried out. Defendant himself testified that he realized that promises as to the future were of such a nature that he should not rely upon them; and, as I read the record, it clearly shows that he admitted that he did not rely on such promises.