RODGERS, Appellant, v. JOHNSON, Respondent.

(196 N. W. 295.)

(File No. 4976.   Opinion filed December 21, 1923.)

1. **Vendor and Purchaser—Fraudulent Representations—Vendor's Statements Held to Be Representations of Fact.**

   Purchaser, being induced by vendor to go to Florida to look at land, was shown where a new grade for a railroad was being built, then over a large uninhabited tract to what appeared to be a natural growth of trees, and shown citrus fruit trees growing within, and vendor stated the prairie land he had shown them was the same as the land with the timber, that he owned 550,000 acres in the locality, had begun colonization, and recently sold some of the tracts, would guarantee 100 settlers within year on lands adjacent to lands he was offering for sale, that he was backing the railroad and guaranteed completion within year, the statements were representations on which purchaser could rely.

2. **Equity—Laches—Laches Is Relative Term, Dependent on Circumstances.**

   Laches is a relative term, dependent on the circumstances of the case.

3. **Vendor and Purchaser—Rescission—Purchaser's Delay in Giving Notice of Rescission Not Inequitable.**

   In action on notes given for purchase price of land in January, 1912, where purchaser did not discover falsity of representations as to the land till 1915, there was no inequity in purchaser's delay in giving notice of rescission until action was begun on the notes in February, 1919.

Appeal from Circuit Court, Minnehaha County; Hon. John T. Medin, Judge.

Action by J. P. Rodgers against Martin J. Johnson. Judgment for defendant and new trial denied, and plaintiff appeals. Affirmed.

*Teigen & Davis* and *Cherry & Marker*, all of Sioux Falls, for Respondent.

*Krause & Krause*, of Dell Rapids, for Respondent.

· (1) To point one of the opinion, Appellant cited: Farwell v. Colonial Trust Co., 147 Fed. 480; Sawyer v. Pitckett, 86 U. S. (19 Wall) 146, 22 L. ed. 105; West Seattle Land & Improvement Co. v. Newlands, 11 Wash. 212, 39 Pac. 366; Day v. Fort Scott Inv. & Imp. Co. (Ill.), 38 N. E. 567; Milwaukee Brick & Cement

Co.v. Schoknecht (Wis.), 84 N. W. 838; Adams. v. Schiffer, 11 Col. 15, 7 A. S. R. 202; Knowlton v. Keenan, 146 Mass. 86, 4 A. S. R. 282; Dowe v. Morris, 148 Mass. 188, 14 A. S. R. 404; Arnold v. Somers (Vt.), 105 Atl. 260, 263; Palmer v. Bell (Me.), 27 Atl. 250.

Respondent cited: Rev. Code 1919, Secs. 904, 906; Rev Code 1919, Sec. 816; 12 R. C. L. 257; 1 Black Rec., etc., pp. 20, 225-226; Grewing v. Mpls. T. M. Co., 12 S. D. 127; Rectenbaugh v. N. W. Port Huron Co., 22 S. D. 410; Windedahl v. Harris, 37 S. D. 7; Union Nat. Bank v. Mailloux, 27 S. D. 543; Britton Milling Co. v. Williams, 184 N. W. 265; McElrath v. Electric Inv. Co. (Minn.), 131 N. W. 380; Russ Lbr. & Mill Co. v. Land & W. Co., 120 Cal. 521; 65 A. S. R. 186; Langley v. Rodriguez, 122 Cal. 580; 68 A. S. R. 70; Henderson v. SanAntonia, etc., R. R. Co. (Tex.), 67 Am. Dec. 675; Blackburn v. Morrison (Okla.), 118 Pac. 402; Ann. Cas. 1913 A, 524; Kohl v. Taylor (Wash.), 114 Pac. 874; 35 L. R. A. (N. S.) 174.

(2) To point two, Appellant cited: Grewing v. Minneapolis M. Co., 12 S. D. 127.

(3) To point three, Appellant cited: Higson v. Hughes (Wash.), 130 Pac. 478.

GATES, J. This action was brought in February, 1919, to recover on defendant's five promissory notes of $400 each, due respectively in October, 1913, 1914, 1915, 1916, and 1917, made and executed to plaintiff pursuant to a contract entered into in January, 1912, between plaintiff and defendant, whereby defendant agreed to purchase Florida land. Defendant had paid a prior note of $475 due October 1912, and the interest on the five notes to October, 1913, and had turned over an automobile at the agreed price of $1,500 and was allowed $100 upon the contract price for his expenses on the trip to Florida. Defendant counterclaimed, seeking a cancellation of the contract and notes and the recovery of the payments made by him. The testimony on the part of defendant tended to show that in November, 1915, he sent plaintiff a notice of rescission of the contract, among other things, on the ground of plaintiff's fraud and misrepresentations at the time of entering into the contract. The trial court submitted certain special interrogatories to the jury which were answered favorably

to the defendant, whereupon the court made findings of fact and conclusions of law in his favor and entered judgment and an order denying new trial.

After reading the voluminous record and briefs, we deem that two questions only, of the several raised by appellant, merit discussion. The first is whether the character of the representations made by appellant to induce respondent to enter into the contract was such as to justify rescission for their breach. The second is whether respondent was chargeable with laches in exercising his right of rescission of the contract.

[1] The representations made by appellant to respondent appear in the following evidentiary findings of the trial court, together with their setting, or the atmosphere surrounding them:

"The court further finds from the evidence in the case that at the time of entering into said contract the plaintiff had induced the defendant (with about forty others) to accompany him by rail from said Minnehaha county to the town of Kissimmee in the state of Florida, and from there by boat a distance of some 60 to 70 miles down a chain of lakes to a place called Alligator Landing, from which place plaintiff took defendant (with said others) in automobiles there in waiting, some seven miles east to what appeared to be a railroad graders' camp, from which a new grade, as though for the building of a railroad, extended north and south as far as visible. That from said camp plaintiff took defendant (with said others) in said automobiles over a large scope of uninhabited and unimproved sandy prairie country to what appeared to be a natural grove of trees or piece of timberland, some 12 to 20 miles distant, and showed them orange trees, grape fruit trees, and lemon trees with fruit thereon, growing within said timber; and the plaintiff then represented and stated that the prairie lands he had shown them and which he was offering for sales at $25 per acre was the same kind and quality of soil and that all of it would grow and produce oranges and other citrus fruits, the same as the land he was showing them in said timber oasis within which such fruits were then growing. And that plaintiff then and there stated to the defendant and others that he (the plaintiff) owned 550,000 acres of land in that locality; that he had then begun colonization thereof; that he had on a recently previous trip contracted the sale of a number of tracts of said

lands; and that he would guarantee at least 100 settlers within one year on lands adjacent to the land he was then showing and offering for sale to defendant and which is covered by said contract. That to induce the defendant to enter into a contract of purchase of said land the plaintiff further stated to him that he (plaintiff) was himself backing the railroad (then partly graded as above stated), and that he would guarantee that said railroad would be completed and trains running both ways by December 1st of that year."

It is earnestly contended by appellant that the above representations were not such as entitled respondent to rely upon them. We are of the opinion, however, that they were substantially representations of existing facts or so interwoven with existing facts as to entitle them to be classed as representations on which the respondent had the right to rely. 12 R. C. L. 257, 259; Western Townsite Co. v. Novotny, 32 S. D. 565, 143 N. W. 895; Windedahl v. Harris, 37 S. D. 7, 156 N. W. 489; Britton Milling Co. v. Williams, 44 S. D. 464, 184 N. W. 265, 21 A. L. R. 1352.

[2] The trial court, as well as the jury, found that respondent did not discover the falsity of the representations until 1915. It is urged that he should have made such discovery sooner. Laches is a relative term, depending upon the circumstances of the case. Grewing v. Minn. T. M. Co., 12 S. D. 127, 80 N. W. 176. Among the things to be considered are the intelligence, mental status, and kind of occupation of the party sought to be charged therewith. Some of these things cannot be adequately reproduced in the record on appeal. The trial court and jury were enabled by personal observation of defendant to determine the standard by which he should be judged. Ordinarily, lapse of time alone is not enough to impute laches.

"Hence, it has been said, laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and oper-

ates as an estoppel against the assertion of the right."    10 R. C. L. 396.

[3]    In this case no inequity to appellant is shown to have resulted by respondent's delay in giving the notice of rescission. Upon the record before us we cannot say that respondent's acts or neglect to act should be judged by the standards that would apply to a keen business man, and we are not disposed to interfere with the determination of the jury and of the trial court that respondent was not chargeable with laches.

The judgment and order appealed from are affirmed.

Note.—Reported in 196 N. W. 295. See, Headnote (1), American Key-Numbered Digest, Vendor and purchaser, Key-No. 37(4), 39 Cyc. 1271, 1272, 1284; (2) Equity, Key-No. 67, 21 C. J. Sec. 217; (3) Vendor and purchaser, Key-No. 119, 39 Cyc. 1428.