REITZ et al., Appellants v. AMPRO ROYALTY TRUST et al., Respondents

SMEENK et al., Appellants v. AMPRO ROYALTY TRUST et al., Respondents

(61N. W.2d 201)

(File Nos. 9340, 9341. Opinion filed November 24, 1953)

**Lem Overpeck,** Belle Fourche, **H. F. Fellows,** Rapid City, for Plaintiffs and Respondents.

**Gale B. Wyman,** Belle Fourche, **Percy H. Helm** and **Roswell Bottum,** Sturgis, for Defendants and Appellants.

LEEDOM, J. Forty-six different plaintiffs in two separate actions brought suit against the defendant Ampro Royalty Trust, appellant here, and against other defendants, to quiet title to the separately held parcels of farm and ranch lands owned by plaintiffs. The specific purpose of the litigation was to set aside mineral deeds transferring to Ampro Royalty Trust 75% of the gas, oil and mineral rights in the land of each plaintiff. The pleadings reduced the issue solely to the question of whether or not the mineral deeds were obtained through the fraud of appellant Ampro Royalty Trust and were therefore voidable. The trial court found fraud. Inasmuch as it is our opinion the record supports

such finding we affirmed the judgment entered by the circuit court decreeing each plaintiff to be owner in fee simple of his land, free of all claims of the appellant.

■ We deem it neither necessary nor useful to detail the evidence relating to the procurement of the many deeds. The trial court accepted as true the testimony of the respondents' witnesses. Under a familiar rule of appellate procedure we therefore view the evidence in the aspects most favorable to respondents. Fairly summarized the evidence thus shows that agents of Ampro Royalty Trust represented to each respondent if he would convey to Ampro 75% of the oil and mineral rights in his land he would receive from Ampro before the completed drilling of an oil well to be started at once in the vicinity, a substantial sum of money that would be equal o the full or in some cases possibly the full market value of his land, proceeds of the sale of a part of the 75% of the mineral and oil rights. It was also represented that buyers for fractional interests of the 75% royalties were then available in the eastern seaboard markets; that in addition another portion of the 75% of such mineral and oil rights would be pooled with similar rights of other land owners in the area and that each respondent would thus acquire an interest in oil or mineral produced on any land within the pool. No consideration whatever other than these assurances passed to any of the 46 respondents for the transfer of the 75% interest, except that in some cases $1 was paid at the time of delivery of the deed; that an oil well drilled in the vicinity completed in December 1949 was a dry hole; that none of the respondents has ever received any payment from the sale of royalty shares or otherwise, from appellant; that each respondent relied on the representations thus made and was thereby induced to make and deliver the deed; that at an indefinite time but rather early in the period of approximately five years during which deeds were being obtained the president of appellant admitted to its agent who was negotiating for the deeds that actually appellant had no present market for the royalty or mineral interests.

From such evidence the trial court made findings that the representations were false and known by the appellant to be false, were made with intent to cheat and defraud the

respondents who believed and relied on the representations and were thereby induced to part with their mineral rights.

 Appellant's principal claim is that representations constituting actionable fraud must relate to a past or existing fact and not to future occurrences; and that fraud cannot be predicated on the statements here made by appellant, all said to be promissory in character. It may be conceded that this broad legal principle is well established. Not all however of the representations on which respondents rely relate to future events. The representation that there were buyers available for the royalties relates to an alleged existing fact. But we do not rest our decision on this one misrepresentation of fact. We look rather at the whole interrelated series of representations in connection with well developed exceptions to the general rule urged by appellant.

Courts have quite effectively declined to open the door to the crafty by refusing to fix hard and fast rules defining fraud and thereby to set a fixed pattern around which might be devised lawful yet fraudulent schemes. There are three recognized deviations from the general rule that have application to the representations made in this case when they are all considered together. All three exceptions are discussed in the annotation appearing in 51 A.L.R. 46, III p. 63, IV p. 81, V p. 85, most lately supplemented in 125 A.L.R. 879.

 **First.** A promise relating to a future event may constitute actionable fraud when made without intention of performance. Accepting respondents' evidence as to the falsity of the representations that there were present buyers for the royalties there is basis for a conclusion that there could have been no honest intention to make the promised future sales with appellant having knowledge no buyers existed. This exception to the general rule has tacit approval in Western Townsite Co. v. Novotny, 32 S.D. 565, 143 N.W. 895. See also Restatement, Contracts, § 473; and 5 Williston, Contracts, (Rev.Ed.) § 1496.

 **Second.** A misrepresentation as to a future event may be actionable where the parties to the transaction are not on equal footing but where one has or is in a position

where he should have superior knowledge concerning the matters to which the misrepresentations relate. Appellant argues that the agents of Ampro on the one hand and the farmers and ranchers on the other, being total strangers, necessarily dealt at arms' length, and that this exception therefore should not apply. We disagree. Appellant's agents went out in a team of two, representing future sales as accomplished facts, and generally and plausibly presenting themselves as experts in the field of marketing oil rights and promoting oil development, a field still quite foreign to South Dakota ranchers. We think under this particular record respondents had a right to rely on the agents' promises by virtue of the latters' claimed superior knowledge. Compare Britton Milling Co. v. Williams, 44 S.D. 464, 184 N.W. 265, 21 A.L.R. 1352, (on rehearing 45 S.D .274, 187 N. W. 159, 21 A.L.R. 1352) and Rodgers v. Johnson, 47 S.D. 131, 196 N.W. 295. See 5 Williston, Contracts, (Rev.Ed.) § 1516, n. 8.

■ ■ **Third.** Misrepresentations of a promissory nature may be the basis of fraud when blended with misrepresentations of fact. Appellant's misrepresentation that there were present buyers cannot be separated from the promise that such buyers would pay substantial prices for fractional interests of the 75% of the respondents' oil rights. The promises of the sales at the estimated figures thus blended with the representations that there were willing and able buyers, made a real inducement of appellant's bare misstatement of fact as to existence of the buyers. Thus the promised future sales became inseparable parts of the fraudulent device. See Britton Milling Co. v. Williams; also Rodgers v. Johnson; supra.

■ Appellant argues further that since one of the respondents testified that he would be reimbursed **possibly** the full value of his land and that Ampro's agents said only that they **thought** they had buyers, there can be no recovery under the rule of Miller v. Stevens, 63 S.D. 10, 256 N.W. 152, which holds in effect that a litigant can claim no greater benefit from litigation than his own testimony will support. Such weakness as there may be in this one party's version of the transaction as revealed in all of his testimony including his

cross-examination is not fatal to his case under this record. Obviously his testimony of his recollection of old conversations, however weak, could not destroy under the rule counsel invoke the stronger and adequate versions of his co-parties, although appellant appears to direct this particular attack toward the cause of all respondents. All parties are in agreement that if all the respondents had testified, their testimony would be the same in substance as that of those who did testify. Thus it is established that the representations made by Ampro's agents were substantially the same to all the people with whom they dealt. The elements essential to a dismissal of a case on the basis of a party's own testimony under the many ramifications of the rule applied in Miller v. Stevens, supra, are not present here. See the comprehensive annotation in 169 A.L.R. 798.

██ ██ It is our view that the combination of representations determined by the trial court to have been made are supported by the record and, considered together, they constitute actionable fraud under applicable rules of law.

The judgment entered by the circuit court is affirmed.

All the Judges concur.