**Larry H. ASCHOFF, Plaintiff and Respondent in # 11887, and Plaintiff and Appellant in # 11894,**

v.

**MOBIL OIL CORPORATION, Defendant and Appellant in # 11887, and Defendant and Respondent in # 11894.**

**Nos. 11887 and 11894.**

Supreme Court of South Dakota.

Argued Feb. 17, 1977.

Decided Dec. 30, 1977.

Rehearing Denied Jan. 25, 1978.

Gale E. Fisher and John E. Burke of May, Johnson & Burke, Sioux Falls, for plaintiff.

Robert C. Heege of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant.

DUNN, Chief Justice.

This is an action seeking actual and exemplary damages for false and fraudulent representations inducing the execution of a contract and lease of a newly-constructed service station. Plaintiff alleged that agents of defendant represented: (1) that the station would do a certain amount of business for a one-year period from May 1, 1972, and that plaintiff would make a profit of $10,982.28 in addition to earning $9,000 [1] for his own labor; (2) that a motel would be constructed and in operation next to the station by the fall of 1972; and (3) that the station would be ready for occupancy and operation on May 1, 1972. Following depositions, defendant moved for summary judgment. The Second Judicial Circuit Court denied the motion, but ordered claim (3) stricken.

Plaintiff in his amended complaint originally sought actual damages of $19,800 [2] and exemplary damages of $15,000. Before trial of the case, plaintiff moved to amend the claim for exemplary damages to $198,000. This was granted. Upon defendant's motion for a directed verdict at the close of the trial, the court dropped claim (2), but denied the motion as to claim (1). The jury returned a verdict of $19,800 actual damages and $20,000 exemplary damages. After judgment was entered, defendant moved for judgment n. o. v. or a new trial. The court ordered the verdict for exemplary damages set aside. Defendant appeals the award of actual damages and plaintiff the setting aside of exemplary damages. We affirm the award of actual damages but reverse the setting aside of exemplary damages.

Plaintiff in February 1972, was employed by a Sioux Falls printing firm on a night shift and had been employed as a printer for a number of years. He decided to seek other employment because of a desire for more money and better working hours. On February 5, 1972, he noticed an ad in his newspaper regarding leasing a Mobil service station. Plaintiff answered the ad. A few days later, Terry Isensee, a representative of defendant, came to plaintiff's home and discussed with plaintiff and his wife the possibility of leasing a station then in operation at 33rd Street and Minnesota Avenue in Sioux Falls. Plaintiff was informed it would take $8,500 to get started in the business.[3] Isensee told plaintiff that he could expect an annual profit of $10,000 to $12,000 from the business. Following this discussion, plaintiff decided to sell his house to raise the money needed and called a local realtor for an appraisal.

Two days later, Isensee returned to plaintiff's home. He was accompanied by Charlie Kensinger, an area manager for defendant. Kensinger told plaintiff that the station previously discussed had been leased, but that a station under construction on West Russell Avenue near Interstate 29 was available. Plaintiff expressed interest in this station as well.

On February 23, 1972, James Melvin, a marketing representative for defendant, and Isensee met with plaintiff and his wife. At that meeting, Melvin stated he would work up a projection for the station. Plaintiff was very interested in receiving this projection. That evening Melvin used five sources to make his projection. These were a Co294A ratio chart published by Mobil, a published report by a local accounting firm specializing in service station accounting, a TBA (tires, batteries, and accessories) petroleum marketing chart, Mobil's records for a company-operated service station at

---

1. The Service Station Operating Analysis, discussed infra, discloses that the $10,982.28 profit figure included the dealer's labor of $9,000.

2. In the amended complaint, plaintiff alleged that he lost $10,800 plus his own labor which he valued at $9,000. He testified during the

trial that he lost $10,200 in operating the station plus his own labor of $9,600.

3. This $8,500 was not a franchise fee but was instead payment for the inventory and equipment defendant required a dealer to have before opening a station.

22nd Street and Minnesota Avenue, and his own personal knowledge of Sioux Falls. He incorporated them into a Service Station Operating Analysis.

The next day, Melvin returned with the Analysis which contained figures disclosing plaintiff's expected sales, expenses, and business profit for the year from April 1972, to March 1973, in a very detailed manner. Among the figures were projections of 360,-000 gallons of gasoline and a dealer's total profit of $10,982.28. Melvin testified he told the Aschoffs that the projection was what the station "could do." Plaintiff and his wife disputed this. They claimed he told them the projection was what the station "will do." The projection was based on the station's being open twenty-four hours a day.

Melvin later accompanied plaintiff to a local savings and loan association where he discussed with a loan officer a Service Station Operating Analysis. This Analysis also contained expected gasoline sales of 360,000 gallons, but the dealer's total profit was adjusted to $8,346 because of plaintiff's inexperience. Plaintiff was given a copy of the new Analysis, but he and Melvin dispute whether the change was discussed. The savings and loan made a loan of $6,000 to plaintiff. He borrowed an additional $2,500 from his mother-in-law. The lease was signed April 6, 1972. A dealer contract was also signed. The station opened May 23, 1972. Plaintiff operated the station twenty-four hours a day at first, but he later began closing it at night because his sales were not sufficient to cover his overhead. Despite the efforts by plaintiff and his wife, he was able to pump less than 180,000 gallons of gasoline. Defendant terminated plaintiff's lease on May 1, 1973.

Plaintiff computed his losses as the $14,-000 he borrowed during the eleven-month period less $2,000 used to pay his own personal expenses and less $1,800 of tools and inventory he took with him when he left the station. To this loss of $10,200 he added his own labor at $2.20 per hour or $9,600.

In resolving these appeals, we must first determine whether this is an action in con-

tract or in tort. The trial court set aside the exemplary damages verdict because it concluded the action was for breach of contract. The court relied upon plaintiff's prayer for actual damages for his "loss incurred in the operation of said service station under the lease and contract plus the plaintiff's loss of time * * *." Plaintiff argues that this action is not an action for breach of contract. He maintains that he is suing in tort for deceit by defendant's agents which occurred prior to his entering the contract.

■ A person finding himself in the plaintiff's position must make an election of remedies. He may affirm the contract and bring a tort action for deceit, or he may repudiate the contract and bring a contract action for rescission or revision. Prosser, Torts, Ch. 18 (4th ed.); Williston on Contracts, Third Edition Sections 1523 through 1531. Viewing the complaint in its entirety, we believe it sets out a tort action for deceit. The fact that the plaintiff sought exemplary damages, plus the fact that all the evidence presented went solely to the question of fraud in the inducement and not in the contract terms, compels us to this conclusion. In light of this determination, the granting of exemplary damages by the jury was proper, and we reversed the trial court's judgment setting aside such award.

■ The defendant contends that the giving of a constructive fraud instruction was error if the action is one based on the tort of deceit. We regard the giving of such an instruction in a tort action for deceit as error (see *Schmidt v. Wildcat Cave*, S.D., 261 N.W.2d 114, handed down December 21, 1977) but conclude that it was not prejudicial error in this case. Instruction eight specifically informed the jury that in order to find for the plaintiff it must find a false representation *known by the defendant's agent to be false* and *made with an intention to deceive* the plaintiff. The instruction goes on to say that if the jurors do not so find their verdict shall be for the defendant. This directly rules out any finding based on constructive fraud because the constructive fraud instruction

points out that such fraud consists of any breach of duty *without any actual fraudulent intent.* This court has held that in a civil action, if a general verdict for the plaintiff is returned and the court on appeal concludes that there is one proper issue and one improper issue submitted, the reviewing court will assume that the verdict was returned upon the issue properly submitted. *Allen v. McLain,* 1955, 75 S.D. 520, 69 N.W.2d 390; *Baker v. Jewell,* 1959, 77 S.D. 573, 96 N.W.2d 299. The verdict could have been properly decided on the actual fraud issue, and we assume that the jury decided it on that issue and not on the constructive fraud issue.

■ Defendant professes error in the court's failure to grant a directed verdict. It urges that liability could not be based on Melvin's projections as to future profits because they were merely his good faith opinion and were based on reasonable documents used in the industry. Defendant relies on *Western Townsite Co. v. Novotny,* 1913, 32 S.D. 565, 143 N.W. 895, which announced the general rule that false representations must be of past or existing facts rather than opinions as to future events to be actionable. See also: *Jewell v. Shell Oil Co.,* 1933, 172 Wash. 603, 21 P.2d 243. This court in Western Townsite excepted from this general rule " 'a statement as to some matter peculiarly within the speaker's knowledge, [which] he makes * * * as a fact.' " 32 S.D. at 568, 143 N.W. at 895. This exception was further explained in *Reitz v. Ampro Royalty Trust,* 1953, 75 S.D. 167, 61 N.W.2d 201.

"A misrepresentation as to a future event may be actionable where the parties·to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate." 75 S.D. at 171–172, 61 N.W.2d at 203.

■ Like the situation in *Reitz,* in this case one of the parties (Melvin), present when the projections were made, was presented as an expert in the business of operating a service station, while the other party (plaintiff) knew little or nothing and had to rely on Melvin's claimed expertise. This expertise and, in particular, the very detailed Service Station Operating Analysis prepared by Melvin were relied upon by plaintiff, his wife, and the loan officer of the savings and loan. The inequality of the parties' positions, the testimony by plaintiff and his wife that Melvin stated the projections were what the station "will do," and the results of plaintiff's efforts at the station, are sufficient to establish by inference a question of fact for the jury. *Funke v. Holland Furnace Co.,* 1960, 78 S.D. 374, 102 N.W.2d 668; *Breneman v. Aune,* 1950, 73 S.D. 478, 44 N.W.2d 219. In addition, the jury was instructed that: "The mere expression of an opinion would not be a representation of a material fact." The jury was correctly instructed as to the law to apply. It evidently chose to believe the projection was a statement of fact rather than merely an expression of an opinion.

■ Defendant claims certain evidentiary rulings require reversal. Two of its claims are that plaintiff's daily business records and his testimony as to his reliance on Melvin's projection should not have been admitted. However, reliance is a necessary element in proving an alleged fraud, and the business records were the best evidence to show that the representation in the Analysis was false. SDCL 19–7–11; *Hotovec v. Howe,* 1961, 79 S.D. 337, 111 N.W.2d 748. We do not find error in admitting either.

■ Defendant also claims that the loan officer should have been allowed to testify that Melvin did not guarantee his projection. While he did testify that the projection was what the station "would do or be anticipated to do," he also testified that the projection was what the station "could do" when asked if Melvin promised the station would yield the projected figures. Because the loan officer was questioned as to whether the projection was promised, it was not error to refuse an inquiry into whether it was guaranteed.

■ We also do not find error in the court's refusal to permit Melvin to testify

as to the reliability of the sources used in his projection. He testified as to what the sources were. Even if we accept defendant's contention that these sources are those ordinarily used in the industry to project a station's sales and profits, their reasonableness does not alter defendant's duty because of its position as compared to plaintiff's. Considering the plaintiff's total lack of experience and complete reliance on representations made by the defendant's agents, the defendant had a duty not only to use reasonable sources but also to explain to the plaintiff why use of these sources would not guarantee success.

 Defendant also asserts as error the court's failure to instruct the jury on the proper burden of proof in a fraud case. It claims the burden which was recognized by this court in *Commercial Credit Equipment Corp. v. Johnson,* 1973, 87 S.D. 411, 416, 209 N.W.2d 548, 551, is that "[f]raud must be proved by a preponderance of the evidence" that is "clear, satisfactory and convincing." The court in the case at bar instructed that plaintiff's burden was by a preponderance of the evidence, but it did not place the additional burden of "clear, satisfactory and convincing" upon plaintiff's evidence. Although defendant did not propose such an instruction, it did object to the instruction given.

We must admit that this court in *Commercial Credit Equipment Corp. v. Johnson,* supra, did state that the burden for proving an alleged fraud is by a "preponderance of the evidence" that is "clear, satisfactory and convincing." See also: *General Finance Corp. v. Fidelity and Casualty Co. of New York,* 1970, D.C.S.D., 311 F.Supp. 353; *Rist v. Karlen,* 1976, S.D., 241 N.W.2d 717. However, the case relied upon by this court in *Commercial Credit* and by the federal court in *General Finance* was *Kunkel v. United Security Ins. Co. of New Jersey,* infra. In that case in which bad faith was alleged by insured, an instruction such as that urged by defendant here was given. The court noted that such an additional burden had been adopted in some states in bad faith cases because they already re-

quired it in fraud cases. The court then held:

"Although we have said that fraud is never presumed or lightly inferred, we have not said the burden to prove fraud required more than a preponderance of the evidence. *Northwest Realty Co. v. Colling,* 82 S.D. 421, 147 N.W.2d 675. We believe this to be the proper standard of proof in this type of case and the rule in most jurisdictions." *Kunkel v. United Security Ins. Co. of New Jersey,* supra, 84 S.D. at 132, 168 N.W.2d at 732.

The burden of proof referred to by the court as "this" standard, we feel, was by a preponderance without the additional condition. Rather than adopting a new burden of proof, the court in *Kunkel* was announcing that it would not require a greater burden of proof in bad faith cases because it did not do so in fraud cases. See: *Northwest Realty Co. v. Colling,* 82 S.D. 421, 147 N.W.2d 675. The interpretations by this court and by the federal courts to the contrary were in error. The instruction given by the court in the case at bar was correct.

 Finally, defendant contends that inflammatory statements made by plaintiff's counsel during voir dire and closing argument, which urged the jury to "punish the corporation" by awarding exemplary damages, and "slanted" reference by counsel to the dismissal of claim (2) require a new trial. Defendant maintains that these remarks were prejudicial not only with regard to the award of exemplary damages but also with regard to the jury's finding of liability. The trial court was in a much better position to judge the impact of these remarks upon the jury. We have reviewed the transcript of these statements, and we cannot say that the trial court abused its discretion in refusing to grant a new trial. *Greve v. Bisson,* 1943, 69 S.D. 208, 8 N.W.2d 859; *Houck v. Hult,* 1931, 58 S.D. 181, 235 N.W. 512; *Whaley v. Vidal,* 1911, 27 S.D. 642, 132 N.W. 248.

The judgment of the trial court awarding actual damages is affirmed, but the order

setting aside the award of exemplary damages is reversed.

All the Justices concur.